[Civ. No. 45907. Second Dist., Div. One. Mar. 4, 1976.]

KENNETH B. KILBOURNE, Plaintiff and Appellant, v.
CITY OF CARPINTERIA et al., Defendants and Respondents.

**COUNSEL**

Nelson Samuel Magedman for Plaintiff and Appellant.

James R. Christiansen for Defendants and Respondents.

**OPINION**

**HANSON, J.—**

## INTRODUCTION

Petitioner-appellant Kenneth B. Kilbourne (hereinafter petitioner), having been removed as a member of the City Council of the City of Carpinteria by a special recall election, appeals from the denial of his petition for a preliminary injunction by the superior court brought by him after the election, seeking to have the election invalidated and new election ordered pursuant to Elections Code section 10016.

The error in the printing of the ballot complained of was that the "u" was left out of his surname, his last name having appeared on the ballot as "Kilborne" rather than "Kilbourne."

## THE CASE

On July 25, 1974, two days after his recall, petitioner filed an affidavit in the superior court entitled, "In the Matter of the Application of Kenneth B. Kilbourne, for Correction of Error, Pursuant to Section 10016 California Elections Code and Request for Order for New Election."

On July 29, 1974, the court below refused to issue an ex parte restraining order but issued an order to show cause setting the hearing for August 20, 1974. Respondent city filed memorandum of points and authorities and declarations in opposition. The court granted leave to Harold N. Smith and Ralph Trigo to intervene and they filed a declaration in opposition.

On August 20, 1974, the hearing was conducted and submitted and on August 21, 1974, the court below ruled that it not only lacked jurisdiction and declared the matter was moot but, feeling "constrained" to do so, also concluded that the preliminary injunction should be denied on the merits.

On October 21, 1974, petitioner filed his notice of appeal.

On June 9, 1975, respondent City of Carpinteria filed a motion to dismiss the appeal on the grounds, among others, that the Elections Code section 10016 upon which petitioner relies provides only for jurisdiction to correct ballot errors *prior* to the election, and the issue is therefore moot and should be dismissed.

On June 24, 1975, there being no opposition papers filed, this court granted respondents' motion to dismiss the appeal. Thereafter petitioner filed a petition for rehearing of the respondents' motion to dismiss the appeal on the ground of inadvertence of his counsel, due to the press of time, to complete and file his brief on appeal. On July 18, 1975, this court issued an order denying respondents' motion to dismiss "without prejudice for renewal at the time of the rehearing of the appeal on its merits." Respondents renewed their motion to dismiss the appeal.

## THE FACTS

The salient facts gleaned from the record on appeal, including the affidavits and declarations and the reporter's transcript of the order to show cause hearing, are as follows:

A recall election was held on July 23, 1974, in the City of Carpinteria, California, between the hours of 7 a.m. and 7 p.m. for the recall of City Councilman Kenneth B. Kilbourne, petitioner herein.

The sample ballot was mailed to approximately 3,666 registered voters between the 8th and 10th of July 1974, which was headed "Municipal Ballot—Special Municipal Election—City of Carpinteria—Santa Barbara County, California—Tuesday, July 23, 1974." The key measure submitted to the vote of the voters by the sample ballot was: "Shall KENNETH B. KILBORNE be recalled from the office of Member of the City Council?—YES_____—NO_____." The only other measure on the ballot pertained to the issue as to whether the vacancy should be filled by appointment or by a special election if the recall prevailed. Petitioner's name was correctly spelled on the statement of grounds for the proposed recall of petitioner which was enclosed with the sample ballot.

The actual ballot followed the format of the sample ballot and also had petitioner's last name spelled as "Kilborne" instead of "Kilbourne." The city election authorities did not become aware of the misspelling on the sample or actual ballot until it was too late to reprint the actual ballot because of the time that would necessarily be consumed in the drying of the ink. The city election authorities decided, on advice of their counsel, that it would not be practical or legal to change the spelling of petitioner's name on the actual ballot by pen and ink because of the provisions of section 14431 of the Elections Code.

Following a turn-out of approximately 29 to 30 percent of the registered voters at the recall election, 768 (71 percent) of the voters were in favor of the recall and 311 (29 percent) were against recall. According to the declaration of Boblee Kirkpatrick, chief of the Elections Bureau of Santa Barbara County, the turn-out of approximately 29 percent for a special single purpose election such as the recall election in question was not unusually low and substantially exceeded the normal turnout for special election purposes in Santa Barbara County. The election officials counted and canvassed the votes of said recall election and certified the results of same, all as provided by the Elections Code. A special election

was held on November 5, 1974, to fill the vacancy created by the recall of petitioner and the vacancy was filled by John W. Fukasawa. The term of the office of city councilman from which petitioner was recalled will expire March 9, 1976.

The petitioner received his sample ballot on or about July 11, 1974, with the "u" left out of his surname. The sample ballot was an exhibit in evidence on July 19, 1974, in other litigation (not pertinent or relevant to the issue at bench) in which petitioner questioned Carpinteria election procedures. Petitioner testified at the order to show cause hearing in the instant case that he did not examine his sample ballot nor did he examine the exhibit in said other litigation and that the first time he was aware of the misspelling of his last name on the sample ballot and on the actual ballot was at the city council meeting during the evening of July 22, 1974, when his name was discussed. He made no protest in regard to his surname being misspelled nor demanded, at the above referred to council meeting, that the actual ballot be reprinted. The first time petitioner made known his protest was late in the day of the actual election; whereas, if the printing error had been brought to the attention of the election officials prior to 8 p.m. of July 22, 1974, the reprinting and drying of the actual ballots could have been accomplished in time for the election the next day.

The City Council of Carpinteria consisted of five councilmen prior to the recall election whose names were: Charles G. Dibble, Kenneth B. Kilbourne, Thomas W. Raycraft, Monte L. Widders and Ernest C. Wullbrandt. The only other adult resident of the City of Carpinteria whose name was remotely similar to petitioner's was the son of petitioner who resided at the same address, Kenneth B. Kilbourne, Jr., who was not on the city council.

### ISSUES

On appeal petitioner Kenneth B. Kilbourne, proceeding under Elections Code section 10016, contends that because the letter "u" was omitted from his surname on the ballot the court below erred in not invalidating the special recall election conducted on July 23, 1974.

Respondent City of Carpinteria contends in its brief on appeal and renewed motion to dismiss the appeal (1) that Elections Code section 10016 does not provide for relief *after* the election and since the incumbent city councilman, whose tenure of office would be affected by

a ruling favorable to petitioner, is an indispensable party and has never been made a party to the proceedings and since the term of office itself from which petitioner was recalled expires after March 9, 1976, the matter is moot; (2) that the doctrine of *idem sonans* applies; and (3) that petitioner is "estopped" from asking for relief since he knew or should have known of the misspelling of his surname on the ballot a sufficient time before the election to have it corrected if he had brought it to the attention of the election authorities, which he failed to do.

## DISCUSSION

Elections Code section 10016 upon which petitioner relies for relief provides as follows: "Whenever it appears by affidavit of a voter that an error or omission has occurred in the publication of the name or description of the candidates or in the printing of the ballots, the superior court of the county shall, upon application of the affiant, by order, require the clerk or secretary of the public agency conducting the election to correct the error or to show cause why the error should not be corrected."

Section 10016 must be read in context of the chapter and division of the Elections Code under which it falls to determine the operational effect intended by the California Legislature.

Section 10016 is contained in chapter 1 entitled "Preparation and Distribution of Ballots. Election Expenses." It is located between section 10005 relating to the printing of ballots and section 10017 relating to the delivery of ballots to the precinct boards and is thus intended to provide for corrections of errors in the printing of ballots before their use in the elections and not after the elections have been held. Section 10016 itself speaks of correcting ballot errors, something which obviously must be done before the election and was not intended to encompass correcting errors in an election itself and does not clothe the courts with the power to invalidate an election already conducted and to order another election.

Accordingly, in the case at bench since petitioner seeks relief pursuant to section 10016 and did not move in the court below until *after* the recall election was held, we hold the court below correctly held that it lacked jurisdiction to grant the relief sought, i.e., to invalidate the election and order a new election.

Moreover, the matter is rendered moot by reason of the events which have occurred since the recall election; namely, the votes have been counted and canvassed and the results certified; a special election has been held filling the vacancy created by the recall of petitioner and the term of the office itself will expire after March 9, 1976. Clearly, the recall of petitioner as a result of the election held on July 23, 1974, is a fait accompli and there is no "effectual relief" that could be granted to petitioner even if his appeal had merit. (See *Crownover* v. *Musick* (1973) 9 Cal.3d 405, 414 [107 Cal.Rptr. 681, 509 P.2d 497]; *Consol. etc. Corp.* v. *United A. etc. Workers* (1946) 27 Cal.2d 859, 862-863 [167 P.2d 725].)

Respondents' motion to dismiss the appeal is granted.[1]

The appeal is dismissed.

Lillie, Acting P. J., and Thompson, J., concurred.

On April 1, 1976, the opinion was modified to read as printed above.

---

[1]In view of our holding any decision on the merits would be ineffectual (see *Lemaire* v. *All City Employees Assn.* (1973) 35 Cal.App.3d 106 [110 Cal.Rptr. 507]), suffice to say, we are constrained, as was the court below, to point out that petitioner would not prevail even if the matter were decided on its merits.

The doctrine of *idem sonans* operates to preclude the relief sought particularly in light of Elections Code section 22806 which states that the code provisions pertaining to municipal elections "shall be liberally construed to promote its objects, and no error, omission or irregularity shall invalidate an election if there has been a substantial compliance . . . ." Here, the mistake was inadvertent and minor in character. Petitioner has made no showing whatsoever that if there was another special election (the only way this minor error could be cured) that the results would be different since petitioner offered no testimony, evidence or declarations to show that a single registered voter was confused by the misspelling of his name or would have voted differently had the misspelling been correct on the actual ballot. On the other hand, Attorney James R. Christiansen, City Attorney for the City of Carpinteria and Harold N. Smith and Ralph Trigo, interveners, in their declarations in opposition stated that they knew of no voters who were misled or confused by reason of the difference in the spelling of petitioner's surname on the actual ballot.

In addition, the doctrine of "estoppel" would operate under this factual situation to preclude the relief sought since petitioner knew or should have known of the error in sufficient time for the election authorities to correct the ballots if he had brought the matter to their attention, which he did not do.