[No. B019965. Second Dist., Div. Four. Mar. 30, 1987.]

KATHY SALAZAR, Plaintiff and Appellant, v.
CITY OF MONTEBELLO et al., Defendants and Respondents.

**COUNSEL**

Kathy Salazar, in pro. per., for Plaintiff and Appellant.

Henry S. Barbosa, City Attorney, for Defendants and Respondents.

**OPINION**

**WOODS, P. J.**—This is an appeal from the dismissal entered after the trial court sustained the demurrer of the City of Montebello and the city clerk (respondents) to Kathy Salazar's (appellant) petition for writ of mandate and declaration of election contest.

Appellant contends that she was entitled to relief under several sections of the Elections Code. We affirm the trial court action on the ground that appellant has failed to prove that the alleged misconduct affected the result of the election.

Around December 26, 1985, appellant filed a petition for writ of mandate and declaration of election contest regarding the Montebello City Council election of November 25, 1985. The crux of her complaint was that, acting upon the advice of the city attorney, the city clerk permitted a candidate named Albert Phillips to be placed on the ballot despite knowledge that Phillips no longer lived at the addresses specified on his nomination papers and voter registration.

Specifically, appellant indicated that Phillips gave his address on the nominating papers as 1109 West Beverly Boulevard in Montebello, although he had not lived there since July 15, 1983. The deputy city clerk penciled in Phillips's last address of registration, 1315 West Beverly Boulevard in Montebello, although Phillips had not lived there since March 31, 1985, and had had no known address since then. The deputy city clerk was aware in August 1985 that Phillips did not live at 1315 West Beverly but followed the city attorney's advice to put the name on the ballot. Phillips had reregistered at 1109 West Beverly Boulevard on October 8, 1985, prior to the election, but subsequent to signing the affidavit of candidacy.

Appellant further maintained that the absence of Phillips from the ballot would have changed the result, as a relatively small number of votes separated the winning and losing candidates.

Respondents' demurrer, filed January 17, 1986, explained that the election was a six-candidate race for three seats. Appellant placed fifth, and Phillips sixth. Accompanying documents showed the following vote spread: Glasman 3,225; Pizzorno 2,387; Nighswonger 2,273; Ramos 2,253; Salazar 2,225; and Phillips 448. Respondents argued that the challenge should have been made before the election; that none of the requisite grounds for an election contest under Elections Code section 20021 were shown; and that appellant had not proven that Phillips's votes would have been cast for her, thus changing the result of the election.

An August 16, 1985 letter from the city attorney to the deputy city clerk was attached to the demurrer as an exhibit. According to the letter, the city clerk's investigation had shown that Phillips did not reside at the addresses he had given and was apparently living out of his car. Since it appeared that Phillips continued to live within the precinct, a judge would likely rule in favor of Phillips's right to run for office, notwithstanding the defective

addresses. Therefore, it was recommended that the nomination be processed and Phillips's name placed on the ballot. The city attorney relied in part on Elections Code section 703.5, which provides that a change of address within the same precinct will not cancel a voter's affidavit of registration.

Appellant complained that the city should have investigated further and contends that the few blocks' difference in Phillips's addresses actually placed him in a different precinct within Montebello.

At the contested hearing on January 12, 1986, the court expressed concern with appellant's failure to establish either that a section 20021 ground existed or that she would have been elected if Phillips had not been on the ballot. The demurrer was sustained without leave to amend on the ground that the election contest and petition for writ of mandate did not state facts sufficient to constitute a cause of action in that it showed on its face that plaintiff had not alleged a cause of action upon which relief could be granted pursuant to Elections Code section 20020 et seq. This appeal followed.

█ Appellant contends that her petition for mandate was appropriate under Elections Code section 10015, which states: "Any voter may seek a writ of mandate alleging that an error or omission has occurred or is about to occur in the placing of any name on, or in the printing of, a ballot, sample ballot, voter pamphlet or other official matter, or that any neglect of duty has occurred or is about to occur. [¶] A peremptory writ of mandate shall issue only upon proof that the error, omission or neglect is in violation of this code or the Constitution and that issuance of the writ will not substantially interfere with the conduct of the election. [¶] Such action or appeal shall have priority over all other civil matters."

█ Appellant disregards the fact that the section is designed to correct preelection ballot errors[1] rather than to invalidate an election which has already been conducted. (*Kilbourne* v. *City of Carpinteria* (1976) 56 Cal.App.3d 11, 16 [128 Cal.Rptr. 133];[2] see *Donham* v. *Gross* (1930) 210

---

[1] Appellant was not aware of the problem regarding Phillips's candidacy until after the election.

[2] *Kilbourne* was decided under former Elections Code section 10016, which stated at that time: " 'Whenever it appears by affidavit of a voter that an error or omission has occurred in the publication of the name or description of the candidates or in the printing of the ballots, the superior court of the county shall, upon application of the affiant, by order, require the clerk or secretary of the public agency conducting the election to correct the error or to show cause why the error should not be corrected.' " (*Kilbourne* v. *City of Carpinteria, supra,* 56 Cal.App.3d at p. 16.) Former section 10016 was amended by Statutes of 1965, chapter 944, section 1 and renumbered section 10015 by Statutes of 1975, chapter 1158, section 24. (Deering's Ann. Elec. Code (1977 ed.) § 10015, p. 17.) Nothing in the amendment or renumbering changes the nature of the statute as one designed for preelection relief.

Cal. 190, 191-193 [290 P. 884].) The cases appellant has cited do not support her position, as none of them involve postelection challenges.

Postelection relief is governed either by quo warranto proceedings (not involved here) or by Elections Code section 20021. (28 Cal.Jur.3d, Elections, § 221, p. 726.)

Section 20021 provides: "Any elector of a county, city, or of any political subdivision of either may contest any election held therein, for any of the following causes: [¶] (a) That the precinct board or any member thereof was guilty of malconduct. [¶] (b) That the person who has been declared elected to an office was not, at the time of the election, eligible to that office. [¶] (c) That the defendant has given to any elector or member of a precinct board any bribe or reward, or has offered any bribe or reward for the purpose of procuring his election, or has committed any other offense against the elective franchise defined in Division 17 (commencing with Section 29100). [¶] (d) That illegal votes were cast. [¶] (e) That the precinct board in conducting the election or in canvassing the returns, made errors sufficient to change the result of the election as to any person who has been declared elected. [¶] (f) That there was an error in the vote-counting programs or summation of ballot counts."

The most factually apposite ground is subdivision (b), which concerns ineligibility of a candidate. However, as recognized by the trial court below, appellant cannot meet subdivision (b)'s requirement that the assertedly ineligible candidate be elected.

The only possible ground remaining to appellant is her contention that subdivision (c) is applicable. As indicated, it permits a contest where "the defendant" has committed or attempted to commit bribery, or "any other offense against the elective franchise defined in Division 17 (commencing with Section 29100)." Division 17 contains a series of penal provisions for election misconduct. Appellant cites section 29200, which punishes "[e]very person who willfully causes, procures, or allows himself or any other person to be registered as a voter, knowing that he or that other person is not entitled to registration" and section 29303, which penalizes a person "who files or submits for filing a nomination paper or declaration of candidacy knowing that it or any part of it has been made falsely . . . ."

An initial problem with the applicability of subdivision (c) is its express requirement that "the defendant" have committed the proscribed act. Here, the declaration of election contest names the city and city clerk as respondents, while Phillips and the other candidates were named as real parties in interest. There is, however, a special definition of a "defendant" set forth

in the Election Contests division of the Elections Code: "that person whose election or nomination is contested . . . ." (§ 20001.) Thus, subdivision (c) could apply to conduct by Phillips which violated the penal provisions of division 17.

Another obstacle for appellant is her failure to clarify which section of the Elections Code she was relying on prior to her briefing on appeal. Section 20050 requires that the contestant of an election file "a written statement setting forth specifically: [¶] . . . . [¶] (d) The particular grounds of contest and the section of this code under which the statement is filed." Appellant's declaration of election contest set forth the pertinent facts but cited only section 6920, which requires that a candidate's name not be placed on the ballot unless a properly filled-out declaration of candidacy has been filed. However, the accompanying petition for writ of mandate cited numerous sections of the Elections Code, including subdivision (c) of section 20021, section 29200, and section 29303. When queried by the trial court at the hearing, appellant expressly argued that subdivision (c) was applicable, further citing section 29200.

We find that the failure to expressly cite subdivision (c) of section 20021 in the elections contest declaration is not fatal to appellant's position. Under section 20053, "[a] statement of the grounds of contest shall not be rejected nor the proceedings dismissed by any court for want of form, if the grounds of contest are alleged with such certainty as will advise the defendant of the particular proceeding or cause for which the election is contested." Respondents here were adequately advised of the nature of appellant's complaint.

Respondents never directly address appellant's contention that subdivision (c) is applicable. Respondents' focus has been upon their contention that appellant was required to show that the alleged misconduct affected the election result. They rely heavily upon *Willburn* v. *Wixson* (1974) 37 Cal.App.3d 730 [112 Cal.Rptr. 620], which found that relatively minor irregularities under subdivisions (a) and (e) of section 20021 did not justify a new election absent proof of such an effect.

We are presented the question of whether the requirement "of an effect upon the election" necessarily applies in the context of a subdivision (c) contest.

■ We recognize the general rules that an election must be held valid where technical errors or irregularities did not affect the result (*Canales* v. *City of Alviso* (1970) 3 Cal.3d 118, 127 [89 Cal.Rptr. 601, 474 P.2d 417]; *Rideout* v. *City of Los Angeles* (1921) 185 Cal. 426, 430 [197 P. 74]); that courts will not defeat the fair expression of the popular will unless the law

permits no alternative (*Law* v. *San Francisco* (1904) 144 Cal. 384, 394 [77 P. 1014]); and that the primary concern is not the parties' claims but ascertaining the public interest and the will of the people (*Enterprise Residents etc. Committee* v. *Brennan* (1978) 22 Cal.3d 767, 774 [151 Cal.Rptr. 1, 587 P.2d 658]; *Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 436 [196 P.2d 884]).

■ On the other hand, there is no statement anywhere in the Elections Code that an election contest based on subdivision (c) requires a showing that the alleged misconduct influenced the result of the election. In contrast, subdivision (b) expressly requires that the allegedly ineligible person be the one "who has been declared elected," and subdivision (e) requires that errors by the precinct board be "sufficient to change the result of the election . . . ."

Similarly, subsequent sections of the Elections Code provide that election contests under various other subdivisions of section 20021 require a showing of an effect on the result. The precinct board malconduct ground of subdivision (a) is governed by sections 20022 and 20023 both of which require that the election result be affected.

Additionally, the "illegal votes" ground of section 20021, subdivision (d) is controlled by section 20024, which precludes setting aside an election on the ground of illegal votes unless it affects the outcome.[3]

No such express statement of an effect on result appears regarding subdivision (c).

Our Supreme Court has recognized the absence of a statutory requirement that a contestant under subdivision (c) must prove an effect upon the election result. *Canales* v. *City of Alviso, supra,* 3 Cal.3d at pages 129-130, considered whether offers of consideration in a ballot measure election to determine whether two cities should consolidate constituted bribery which would void the election under subdivision (c). The court held that "a contestant of a ballot measure election who relies upon subdivision (c) [is required] to show that a defendant who offered valuable consideration thereby affected the outcome of the election, . . ." (At p. 130; fn. omitted.) It expressly left open the question whether a "demonstration that the misdeeds determined the result of the election" was necessary in a *candidate election* contested under subdivision (c). (*Ibid.*, fn.5.) It recognized the possibility that in candidate elections, unlike ballot measure elections, a candidate who benefited from

---

[3]Section 20024 provides: "[U]nless it appears that a number of illegal votes has been given to the person whose right to the office is contested or who has been certified as having tied for first place, which, if taken from him, would reduce the number of his legal votes below the number of votes given to some other person for the same office, after deducting therefrom the illegal votes which may be shown to have been given to that other person."

corrupt practices, which he or she authorized, should suffer the consequences. (*Ibid.*)

Here, it appears that appellant met the requirements of subdivision (c). While we look to the *Canales* discussion for guidance, we are confronted with a different factual situation as we do not have a bribery case before us. Our facts involve the "other offense" section of subdivision (c) as defined under sections 29200 and 29303 of division 17. It is our conclusion that, where bribery is not involved, a subdivision (c) contest is controlled by the general rules upholding elections which require us to look to the effect on the result of an election to determine whether that election must be overturned. An election must be held valid where technical errors or irregularities do not affect the result.

▇▇▇ Mr. Phillips apparently lied about his address, but he did continue to live in the city in which he was running for office. The city acted in good faith in deciding that he was an eligible candidate. It was incumbent upon appellant to establish an effect upon the outcome of the election. She has speculated regarding the votes which went to Phillips, but she is unable to prove that his candidacy actually affected the election result. In light of that failure, the demurrer was properly sustained.

The judgment is affirmed. Each side to bear its own costs.

Kingsley, J., and McClosky, J., concurred.