Filed 9/17/20; Certified for Publication 10/14/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL DENNY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JOHN ARNTZ, as Director, etc., et al.<br><br>    Defendants and Respondents. | A158029<br><br>(City & County of San Francisco Super. Ct. No. CGC-19-575070) |

In November 2018, the voters in San Francisco passed Proposition A, the Embarcadero Seawall Earthquake Safety Bond, by 82.7 percent of the popular vote. The following spring, plaintiff Michael Denny filed a lawsuit against defendant John Arntz, the San Francisco Director of Elections, and defendant Dennis Herrera, the City Attorney, to set aside Proposition A. Denny alleged that, in various ways, the ballot materials were not fair and impartial, thus constituting grounds to contest the election outcome under Elections Code section 16100.[1] Defendants demurred to the complaint, arguing that it failed to state a claim based on any of the permissible grounds for a postelection contest under section 16100. The trial court sustained

---

[1] Undesignated statutory references are to the Elections Code.

1

defendants' demurrer without leave to amend and entered a judgment of dismissal.  Denny appeals from the judgment.  We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We draw our statement of facts from the complaint and the documents that were judicially noticed by the trial court.[2]

A.    *Proposition A*

At the November 6, 2018 election, the City and County of San Francisco (City) general election ballot[3] contained Proposition A, which put to the voters whether the City should issue bonds to fund repairs and improvements to the Embarcadero Seawall.

The official language for Proposition A that appeared on the ballot was as follows:

"SAN FRANCISCO SEAWALL EARTHQUAKE SAFETY BOND, 2018:  To protect the waterfront, [Bay Area Rapid Transit] and MUNI, buildings, historic piers, and roads from earthquakes, flooding and rising seas, by: repairing the 100 year old Embarcadero Seawall; strengthening the Embarcadero; and fortifying transit infrastructure and utilities serving residents and businesses; shall the city issue $425,000,000 in bonds, with a duration up to 30 years from the time of issuance, an estimated tax rate of $0.013/$100 of assessed property

---

[2] In his appellate briefs, Denny requests that this court take judicial notice of sample ballots and local measure materials for various elections in California and other states.  There is no indication that these materials were presented to the trial court, and appellate courts are not required to take judicial notice of documents in those circumstances.  (*McMahan v. City and County of San Francisco* (2005) 127 Cal.App.4th 1368, 1373, fn. 2.)  In any event, we do not find them relevant and the request is denied.

[3] A ballot contains, among other things, the "[t]itles and summaries of measures submitted to vote of the voters."  (§ 13103, subd. (c).)

value, and estimated annual revenues of up to $40,000,000, with citizen oversight and regular audits?  The City's current debt management policy is to keep the property tax rate from City general obligation bonds below the 2006 rate by issuing new bonds as older ones are retired and the tax base grows, though the overall property tax rate may vary based on other factors."

Consistent with the City's Municipal Elections Code, a Voter Information Pamphlet, which included a digest of Proposition A, was prepared for the November 2018 election and distributed to every registered voter in the City.  (S.F. Mun. Elec. Code, §§ 500, 502.)  The digest of Proposition A was written by the City's Ballot Simplification Committee (BSC)—a group responsible under the City's Municipal Elections Code for digests of local ballot measures.  (S.F. Mun. Elec. Code, §§ 500, subd. (c)(3), 515; 610, subd. (a)(1).)  Generally, these digests consist of four sections: (1) "The Way It Is Now"; (2) "The Proposal"; (3) "A 'Yes' Vote Means"; and (4) "A 'No' Vote Means."  (S.F. Mun. Elec. Code, § 515, subd. (a).)  The digests must meet certain characteristics; for example, generally they do not exceed 300 words and they must be written for eighth-grade level readability.  (S.F. Mun. Elec. Code, § 515, subds. (b)-(c).)

The BSC holds meetings where the public can provide comments regarding the proposed digests.  (S.F. Mun. Elec. Code, § 590; see also § 9295 [providing a 10-day public examination period during which members of the public may review the voter information pamphlet before it is printed].)  The BSC held public meetings on July 30 and August 3, 2018, to discuss the digest language for Proposition A in advance of the November 6 election.

3

The Voter Information Pamphlet contained additional information about Proposition A: the City controller's financial analysis, the City Attorney's general statement about the measure, and arguments in favor and against the measure. (S.F. Mun. Elec. Code, §§ 510, subd. (a), 520, 540, 550, subd. (a).) There were also paid arguments in favor of the proposition; paid arguments in opposition are permitted, but none were submitted. (*Id.*, § 555.) The Voter Information Pamphlet also included the full text of Proposition A, which ran to some three single spaced pages.

Proposition A passed in November 2018 with 82.7 percent of votes cast in favor.

B.    *Denny Files Suit to Set Aside Proposition A*

In April 2019, Denny, representing himself, filed a lawsuit to set aside Proposition A pursuant to section 16100, subdivision (c) based on five grounds: (1) the digest prepared by the BSC was not impartial; (2) the City should not have included paid ballot arguments in the Voter Information Pamphlet; (3) the ballot question for Proposition A violated the Elections Code because it did not include the phrase "shall the measure . . . be adopted"; (4) the ballot question was not impartial and the title should not have been printed in upper case letters; (5) the ballot question for Proposition A was too long. The complaint alleged that these purported deficiencies constituted a failure to comply with section 13119 et seq., which sets forth the content requirements for ballots.[4] Denny alleged that each deficiency

_____

[4] Section 13119 provides, in relevant part, "[t]he ballots used when voting upon a measure . . . authorizing the issuance of bonds or the incurrence of debt, shall have printed on them the words 'Shall the measure (stating the nature thereof) be adopted?' To the right or below the statement of the measure to be voted on, the words 'Yes' and 'No' shall be printed on separate lines, with voting targets." (§ 13119, subd. (a).) It also requires the

4

constituted an actionable "offense [by defendants] against the elective franchise" within the meaning of section 16100, subdivision (c), which authorizes election contests in certain circumstances. (§ 16100, subd. (c).)

Defendants demurred to the complaint on multiple grounds, including that Denny had failed to avail himself of *preelection* remedies for challenging the Voter Information Pamphlet and Ballot language, and that the complaint in any event could not state a claim as a postelection challenge under section 16100. After a hearing, the trial court issued a detailed order sustaining the demurrer without leave to amend. The trial court determined that "none of the grounds giving rise to a post-election challenge under Elections Code section 16100 applies." The court explained that Denny's reliance on section 16100, subdivision (c) was misplaced because: (1) that section applies only to the conduct of candidates in an election; (2) failing to provide an impartial analysis is not an "offense against the elective franchise" within the meaning of section 16100, subdivision (c); and (3) Denny failed to show that any alleged violations of the law effected the outcome of the election, as required by section 16100, subdivision (c). Denny timely appealed.

## DISCUSSION

This dispute centers on whether Denny's allegations—that Proposition A's ballot materials were not impartial due to its alleged deficiencies—state a claim that defendants committed an offense against the election franchise under section 16100 subdivision (c). Denny contends his claims are cognizable under the Elections Code, and the demurrer was procedurally improper. We address each contention in turn.

statement of the measure to be true, impartial, and should not be argumentative or "likely to create prejudice for or against the measure." (§ 13119, subd. (c).)

5

A. *Standard of Review*

Our standard of review is well established. "When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.] Courts must also consider judicially noticed matters. [Citation.] In addition, we give the complaint a reasonable interpretation, and read it in context. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

"[W]e determine whether the complaint states facts sufficient to state a cause of action." (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) "If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer." (*Quelimane Company v. Stewart Title Guaranty Company* (1998) 19 Cal.4th 26, 38.) Issues of statutory construction are questions of law subject to independent review. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082.)

Our review is de novo, but appellant bears the burden of demonstrating error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We treat a party who represents himself on appeal as we would any other party or attorney. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

B. *Denny Cannot Proceed With A Post-Election Contest*

It is " ' "the duty of the court to validate the election if possible," ' " meaning the election " ' "must be held valid unless plainly illegal." ' " (*Friends of Sierra Madre v. City of Sierra Madre* (2001) 25 Cal.4th 165, 192

6

(*Friends of Sierra Madre*).) Thus, a "court's authority to invalidate an election is limited to the bases for contest specified in Elections Code section 16100." (*Ibid*.) Those bases include misconduct of a precinct board member, the elected person being ineligible for office at the time of election, bribery or offense against the elective franchise, the casting of illegal votes, denial of eligible voters' right to vote, precinct board errors in canvassing or conducting the election returns, and an error in vote counting programs or summation. (§ 16100, subds. (a)-(g).)

Denny's complaint is based on section 16100, subdivision (c), which authorizes an election contest on the ground that "[t]*he defendant* has given to any elector or member of a precinct board any bribe or reward, or has offered any bribe or reward for the purpose of procuring his election, or has committed any other offense against the elective franchise." (Italics added.)

The trial court concluded that although Denny labeled his claim statutory misconduct by defendants under section 16100, subdivision (c), his complaint is actually a challenge to the sufficiency and impartiality of Proposition A's digest and ballot materials, and that is a claim that can only be raised preelection. (*Friends of Sierra Madre*, *supra*, 25 Cal.4th at pp. 192-194.) As we explain below, we agree with the trial court that Denny failed to state a claim under section 16100.

The first issue with Denny's complaint is the definition of "defendant" under section 16100, subdivision (c). The Elections Code defines "defendant" as, essentially, a candidate in the election. (§ 16002 [defining "defendant" as "that person whose election or nomination is contested or those persons receiving an equal and highest number of votes, other than the contestant, where, in other than primary elections, the body canvassing the returns declares that no one person has received the highest number of votes for the

7

contested office"].) By its terms, section 16100 subdivision (c) applies where a defendant (i.e., candidate) has offered a bribe or otherwise "has committed any other offense against the elective franchise defined in Division 18 (commencing with Section 18000)." (§ 16100, subd. (c).) Neither of the defendants here were candidates in the November 2018 election.

Although Denny relies on *Canales v. City of Alviso* (1970) 3 Cal.3d 118, to support his argument that section 16100, subdivision (c) allows election contests to ballot measures as well as candidate conduct, that reliance is misplaced. In *Canales*, our Supreme Court construed a prior version of section 16100, subdivision (c) to allow an election contest where proponents of a ballot measure offered bribes to secure the passage of a measure, and the challenger sought a recount. (*Id.* at pp. 129-130.) The court noted the bribes "should not void an election unless it is shown that the result would have been different without their influence"—that it affected the outcome of the election. (*Id.* at p. 130.) Here, Denny does not seek a recount of the ballots. Nor, as we will discuss, does he satisfy the requirement of alleging facts that any improper conduct affected the outcome of the election. (See *ibid.*; see also *Horwath v. City of East Palo Alto* (1989) 212 Cal.App.3d 766, 774 ["When a contestant seeking to overturn a ballot measure election, as opposed to a candidate election, relies on subdivision (c), he or she must demonstrate that the forbidden act affected the outcome"].)

Second, section 16100, subdivision (c) does not provide a statutory basis "to attack the outcome of an election based on deficiencies in the impartial analysis" of a ballot measure after the election, such as the attack Denny wages on Proposition A here. (*People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 932 (*Kerr*).) Enforcing the requirements for an impartial analysis of a ballot is a preelection activity. (*Friends of Sierra*

8

*Madre*, *supra*, 25 Cal.4th at pp. 178-179, 193 [postelection challenge to a local ordinance based on city improperly changing the ordinance's language on scope and intent not permitted by section 16100].)

Both the California Elections Code and the City's Municipal Elections Code authorize preelection challenges to alleged flaws in the Voter Information Pamphlet or ballot and set out the procedure for doing so. During the 10-day public examination period when the public may review the Voter Information Pamphlet prior to printing, "any voter of the jurisdiction in which the election is being held, or the elections official, himself or herself, may seek a writ of mandate or an injunction requiring any or all of the materials to be amended or deleted." (§ 9295, subd. (b)(1); see also S.F. Mun. Elec. Code, § 590.) The writ of mandate or injunction must be filed "no later than the end of the 10-calendar-day public examination period." (§ 9295, subd. (b)(1).)

Section 13314 similarly permits a voter to seek a preelection writ of mandate "alleging that an error or omission has occurred, or is about to occur, in the placing of a name on, or in the printing of, a ballot, county voter information guide, state voter information guide, or other official matter, or that any neglect of duty has occurred, or is about to occur." (§ 13314, subd. (a)(1).) In *Kerr*, for example, a group of citizens made a postelection challenge to the passage of a local measure adopting a county charter by claiming, among other things, the measure was misleadingly described in the ballot materials, which also omitted a fiscal impact statement. (*Kerr*, *supra*, 106 Cal.App.4th at p. 918.) The court noted that "anyone who thought that the impartial analysis provided with the ballot materials was somehow deficient might have made a preelection effort to cure any deficiency and thereby

9

prevent any alleged misleading of the voters before it happened." (*Id.* at pp. 931-932.)

Nothing in Denny's complaint or the proceedings in the trial court reflect that he availed himself of preelection procedures for challenging the Proposition A ballot materials or digest. The BSC held public meetings on July 30 and August 3, 2018, at which members of the public had the opportunity to comment on the digest of Proposition A. (See § 9295, subd. (a)-(b).) If Denny believed the impartial analysis or other ballot materials or digest were deficient, he could have made a preelection effort to cure them at public meetings or by a writ of mandate. (See § 13314, subd. (a)(1).) Denny does not dispute that a preelection writ of mandate was an available remedy and that he did not use it. His postelection challenges to the ballot and information pamphlet after Proposition A has already passed cannot proceed.[5]

Denny nonetheless argues that the failure of a local ballot measure to strictly comply with Elections Code requirements for language and form gives rise to a proper postelection challenge. But the two cases he relies on do not support his point; both cases address challenges to ballot materials and voter guides that were made before the election, not after. (See *Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417, 1426 [preelection petitions for writs of mandate to address false or misleading statements];

_____

[5] We note that courts have recognized "the 'possibility' that an impartial analysis of a county measure or other ballot materials can be so misleading and inaccurate 'that constitutional due process requires invalidation of the election,' " but Denny does not raise any such claim here. (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 123.)

10

*McDonough v. Superior Court* (2012) 204 Cal.App.4th 1169, 1173 [preelection writ of mandate challenging ballot title and question].)

Finally, even if Denny could rely on section 16100, subdivision (c) as a basis to challenge the ballot measure, Denny does not allege the defendants' actions affected the election results for Proposition A as required for ballot measure election contests under section 16100, subdivision (c). (*Horwath v. City of East Palo Alto, supra,* 212 Cal.App.3d at p. 774 ["When a contestant seeking to overturn a ballot measure election, as opposed to a candidate election, relies on subdivision (c), he or she must demonstrate that the forbidden act affected the outcome"].) In *Horwath*, plaintiffs alleged that the city attorney failed to provide complete and impartial analysis of a ballot measure, rendering the election process as "hopelessly riddled with the effects of misleading official ballot materials." (*Id*. at pp. 771-772.) By failing to demonstrate how these deficiencies affected the ability of the voters to make an informed choice, the court determined the plaintiffs were not entitled to relief because they could not "maintain a statutory election contest." (*Id*. at pp. 774-775; see also *Nguyen v. Nguyen* (2008) 158 Cal.App.4th 1636, 1662-1663 [noting "[w]here technical deviations from Elections Code provisions have not posed the possibility of an actual change of result, the courts have uniformly upheld the results of the election as against any challenges based on those technical deviations"].)

Here, rather than alleging that deficient language and analysis in the ballot materials affected the outcome of Proposition A, Denny admits in his complaint, "[n]o one can say with any certainty what the will of the voters would have been if they had been . . . presented with a ballot stating the chief purpose of the measure free from language that is untrue, misleading, partial and likely to create prejudice in favor of the measure." But where "voters are

11

provided the whole text of a proposed law or ordinance, we ordinarily assume the voters voted intelligently on the matter." (*Owens v. County of Los Angeles, supra,* 220 Cal.App.4th at p. 126.) Here, as we have described, the voters were provided with the full text of Proposition A, and we assume that any alleged discrepancies in the ballot materials did not affect the voters' ability to vote intelligently.

Arguing that he is not required to make this showing, Denny relies entirely on *Bradley v. Perrodin* (2003) 106 Cal.App.4th 1153, a case annulling the election of a candidate who fraudulently registered voters, despite the lack of evidence that the misconduct affected the election outcome. *Bradley* is inapposite. It expressly distinguished invalidating the election results for a candidate (as compared to a ballot measure) in the absence of any evidence that unlawful behavior changed the outcome of the election. (*Id.* at p. 1168.) Indeed, the court reiterated that a ballot measure election "should not be annulled for the misdeeds of the measure's proponents, 'unless the misdeeds affected the outcome.' " (*Ibid.*)

"[M]ost of the time [a court's] analysis ends with determination of whether plaintiff is attacking election on one of the grounds specified in section 16100." (*McKinney v. Superior Court* (2004) 124 Cal.App.4th 951, 955, 958 [holding that a postelection challenge brought on the theory that a write-in candidate who lost in an election was ineligible for office and it affected the outcome of the election should have been brought before the election].) Because Denny has not stated any grounds for relief under section 16100 for a postelection contest, our analysis ends here, and we do not assess the particulars of his claim that the Proposition A ballot materials were

technically deficient under section 13119. (See *id*. at p. 958.) Nor do we address defendants' remaining arguments in support of the demurrer.[6]

Based on the foregoing, we conclude the trial court properly sustained the demurrer.

C.    *The Demurrer Was Procedurally Proper*

Denny argues defendants were not authorized to file a demurrer because his claim is governed by the election contest procedures set forth in Division 16, Chapter 5, Article 3 of the Elections Code (§ 16440 et seq.), not the Code of Civil Procedure. He contends that defendants were required under section 16400, subdivision (c) to file an affidavit to respond to his complaint.

Denny's argument is premised on his assumption that his complaint states a claim under section 16100 subdivision (c), which, as we have addressed above, is incorrect. Because Denny does not properly allege a section 16100 subdivision (c) claim, limiting the trial court's procedures to those in Article 3 and precluding a demurrer is unwarranted here.[7]

---

[6] Defendants argue Denny's claims were untimely within the limits set under section 16401, requiring election contests based on grounds aside from section 16100, subdivision (c) to be brought within 30 days after the Director of Elections has declared the results of the election; and Government Code section 53511 for actions to determine the validity of bonds. Nor do we address defendants' argument that Denny's claims fail under the Third Validating Act of 2018. (Sen. Bill No. 1499 (2017-2018 Reg. Sess.) §§ 1, 6.)

[7] The procedures in Division 16, Chapter 5, Article 3 govern election contests based on limited, specific grounds, including section 16100, subdivision (c), offenses against an elective franchise (§ 16440 [identifying the election contest grounds to which Article 3 applies].) They require a contestant to file an affidavit alleging the contest grounds with the clerk of the superior court, which must then be served on the defendant—which, as noted above, is a candidate. (§ 16442; see also § 16002.) The statute further provides that "[n]o special appearance, demurrer or objection may be taken

Nor do we credit Denny's additional claim that the Code of Civil Procedure is generally inapplicable to election contests. The Elections Code expressly incorporates the Code of Civil Procedure into procedures for election contests as long as they are compatible. Section 16602, which sets forth the procedures for election contests, states that trial courts shall "be governed by the rules of law and evidence governing the determination of questions of law and fact, so far as the same may be applicable." (§ 16602; cf. *Anderson v. County of Santa Barbara* (1976) 56 Cal.App.3d 780, 786-788 [finding Code of Civil Procedure section 437c timelines for filing a summary judgment motion 60 days after a general appearance in court incompatible with election contest requirements to commence a trial within 45 days of filing the contest].)

There is no such incompatibility between a demurrer and Denny's election contest. Section 16602 authorizes a trial court to "dismiss the proceedings if the statement of the cause of the contest is insufficient," which is no different from the standards in a demurrer under the Code of Civil Procedure. (§ 16602; Code Civ. Proc. § 430.10, subd. (e) [authorizing a demurrer if the "pleading does not state facts sufficient to constitute a cause of action"].) Indeed, other courts have resolved election contests through demurrers. (See, e.g., *Salazar v. City of Montebello* (1987) 190 Cal.App.3d 953, 955 [affirming trial court order sustaining a demurrer in an election contest]; *Hale v. Farrell* (1981) 115 Cal.App.3d 164, 168 [affirming trial court order sustaining election contest on one cause of action].)

---

other than by the affidavits which shall be considered a general appearance in the contest." (§ 16444.)

14

This case is no different. Defendants' demurrer was properly before the trial court.

D.      *Leave to Amend Is Not Warranted*

The trial court sustained the demurrer without leave to amend. In his brief on appeal, Denny has not argued that he could cure any defects in the causes of action in the complaint, but he states without more that he seeks leave to amend his complaint to add a new ground for relief "based on the restriction in Proposition 46 that the measure purports to impose *ad valorem* taxes for bonded indebtedness for purposes other than 'the acquisition or improvement of real property.' " This is the sum total of the argument.

Although an amendment to a complaint may be requested for the first time on appeal, we reject this request because Denny has not demonstrated to us how this amendment would allow him to state a cause of action. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386) [leave to amend may be made for the first time in the reviewing court, but requires demonstrating a reasonable possibility an amendment will cure the complaint's defects]; *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [requiring party to "clearly and specifically set forth the 'applicable substantive law' and the legal basis for amendment, i.e., the elements of the cause of action and authority for it," and all specific factual allegations for the claim].) Denny's complaint was properly dismissed without leave to amend.[8]

---

[8] We do not address Denny's additional claims, asking us to rewrite the Elections Code timing requirements for filing election contests, and to invalidate the City's Municipal Code sections 515 and 600, governing the BSC and the procedures and requirements for preparing ballot materials for voter pamphlets. Those claims were not raised in his complaint. (*Jones v. Kvistad* (1971) 19 Cal.App.3d 836, 842 ["Ordinarily a party is prohibited from

15

# DISPOSITION

The judgment of dismissal is affirmed.

---

asserting on appeal claims to relief not asserted or requested in the court below"].)

_____
Miller, J.

WE CONCUR:


_____
Kline, P.J.


_____
Richman, J.


A158029, *Denny v. Arntz*

17

Filed 10/14/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL DENNY,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JOHN ARNTZ, as Director, etc., et al.<br><br>        Defendants and Respondents. | A158029<br><br>(City & County of San Francisco Super. Ct. No. CGC-19-575070) |

BY THE COURT:

The opinion in the above-entitled matter filed on September 17, 2020, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.


Dated: _____          _____

                                                            Kline, P.J.

Court:  San Francisco County Superior Court

Trial Judge:  Hon. Ethan P. Schulman

Michael Denny, in pro per, for Plaintiff and Appellant

Dennis J. Herrera, City Attorney, Wayne Snodgrass, Tara M. Steeley, Deputy City Attorneys, for Defendants and Respondents

A158029, *Denny v. Arntz*