[No. G040100. Fourth Dist., Div. Three. Mar. 26, 2008.]

DEBBIE COOK, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
KEITH CARLSON, Real Party in Interest.

COUNSEL

Mark Rosen; Strumwasser & Woocher and Frederic D. Woocher for Petitioner.

No appearance for Respondent.

Michael J. Schroeder for Real Party in Interest.

OPINION

**SILLS, P. J.**—Keith Carlson, who is the treasurer of the state Republican Party, filed this action in Orange County Superior Court on Monday, March 17, 2008, requesting a writ of mandate stopping Debbie Cook, who is a candidate in the upcoming June *Democratic* primary in the 46th Congressional District, from using the title of mayor in her ballot designation. She is, in fact, the Mayor of Huntington Beach, but Carlson claims that because she was elected by the city council and not the electorate directly, that she cannot use the title.[1] While most of the 46th Congressional District is within

---

[1] The theory is that section 13107, subdivision (a)(1) of the Elections Code only allows reference to an "elective city . . . office which the candidate holds at the time of filing the nomination documents." (While we do not decide the issue now, we do observe that under this reading of the statute, the President of the United States, having been elected by the Electoral College or House of Representatives, would not qualify.) While section 13107, subdivision (a)(3) does allow for designations of a candidate's "current principal professions, vocations, or occupations," Carlson claims that it does not include being the Mayor of the City of Huntington Beach.

All otherwise undesignated statutory references in this opinion will be to the Elections Code.

Orange County, it includes parts of Los Angeles County as well. On Friday, March 21, 2008, the trial court denied a request to dismiss the action for lack of jurisdiction, and ordered Cook to sit for a deposition.[2] Cook brought this petition on Monday, March 24, 2008, for writ of mandate or prohibition, seeking dismissal of the action and a stay of her deposition. (This court granted the request for stay of the deposition that Monday afternoon. On Tuesday afternoon we stayed the trial.)

We leave aside the question of whether Carlson who, to be sure, lives and votes in the 46th Congressional District, is an "elector" as the term is used in section 13314, in an election in which he presumably cannot vote. (See generally *California Democratic Party v. Jones* (2000) 530 U.S. 567, 577 [147 L.Ed.2d 502, 120 S.Ct. 2402] [condemning open primary law, saying: "Proposition 198 forces political parties to associate with—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival."].) To be fair to Carlson, he would be an "elector" in the general election if Cook won the primary and was still mayor. (See § 321 [" 'Elector' means any person who is a United States citizen 18 years of age or older and a resident of an election precinct at least 15 days prior to an election."].)

In any event, the question of Carlson's standing is academic. The request that the case be dismissed because the Orange County Superior Court lacks jurisdiction—or to be precise—necessarily is about to lack jurisdiction—is well taken.

■ Let us explain: Section 13314 allows "Any elector" to challenge by writ of mandate an error in regard to ballot designations. The statute, however, is very specific that venue for such a proceeding is "exclusively in Sacramento" when the Secretary of State "is named" as a "real party in interest" or a "respondent."[3]

---

[2] *The theory was apparently to try to establish that the duties of a mayor in a major city in* Orange County are ceremonial at best, so that Cook could not claim that being "mayor" was a principal profession, vocation or occupation under section 13107, subdivision (a)(3). That is a highly counterintuitive proposition at best, given that mayors of cities of the population of Huntington Beach typically are on call 24 hours a day, seven days a week to respond to major municipal emergencies, have independent powers of appointment, receive extra compensation, serve on regional commissions and are under a duty, often spared ordinary council members, of attendance at ceremonial functions. Cook's own declaration in this case shows that she has no profession other than her service on the city council and as mayor (she closed her law practice on joining the council) and spends 10 to 20 hours more per week as mayor than she did as a council member. What the deposition might have added to her declaration—other than diverting her own time and resources—is not apparent.

[3] Section 13314 provides in its entirety:

"(a)(1) Any elector may seek a writ of mandate alleging that an error or omission has occurred, or is about to occur, in the placing of any name on, or in the printing of, a ballot,

Now, to be sure, the Secretary of State has not—as of the moment—been named a real party in interest or a respondent. However, if the Secretary of State is an indispensable party to the proceedings, then the Secretary *must* be joined to the proceedings. The applicable statute (Code Civ. Proc., § 389, subd. (a)) uses the word "shall."[4] (See also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 2:159, p. 2-43 (rev. #1, 2007) ["Joinder will be ordered if feasible: Wherever plaintiff fails to join some person necessary for a just adjudication, the court shall order that person be made a party to the action."].) And in this particular case, we need not deal with any issue regarding whether joinder is feasible. It is difficult to imagine circumstances under which the Secretary of State, a constitutional officeholder, could not be joined. And Carlson offers no reason the Secretary of State could not be joined, or any explanation for not joining her in the first place.

---

sample ballot, voter pamphlet, or other official matter, or that any neglect of duty has occurred, or is about to occur.

"(2) A peremptory writ of mandate shall issue only upon proof of both of the following: (A) that the error, omission, or neglect is in violation of this code or the Constitution, and (B) that issuance of the writ will not substantially interfere with the conduct of the election.

"(3) The action or appeal shall have priority over all other civil matters.

"(b) Venue for a proceeding under this section *shall be exclusively in Sacramento County* in any of the following cases:

"(1) The *Secretary of State is named as a real party in interest or as a respondent.*

"(2) A candidate for statewide elective office is named as a party.

"(3) A statewide measure that is to be placed on the ballot is the subject of the proceeding." (Italics added.)

[4] Section 389 of the Code of Civil Procedure provides in its entirety:

"(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. *If he has not been so joined, the court shall order that he be made a party.*

"(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder.

"(c) A complaint or cross-complaint shall state the names, if known to the pleader, of any persons as described in paragraph (1) or (2) of subdivision (a) who are not joined, and the reasons why they are not joined.

"(d) Nothing in this section affects the law applicable to class actions." (Italics added.)

Indeed, Carlson, has, in fact, conceded the point that if the Secretary of State were an indispensable party, the case would have to be filed in Sacramento. In informal opposition papers filed Monday March 24, 2008, his counsel wrote: "Here, Cook is not running for statewide office. Therefore, the *only way* for this case to be tried in Sacramento is if the Court finds that the Secretary of State is a necessary party." (Original italics.)

The case thus devolves on the question of whether the Secretary of State is an indispensable party. The criteria for indispensable party status is found in section 389, subdivision (a) of the Code of Civil Procedure, which we have already quoted in the margin.

In California's Elections Code, there is a process for the transmission of *nomination documents, including candidate's ballot designations*. There is a provision, in section 8020, that candidates in primaries "deliver" their nomination papers to the local "elections official."[5] On the other hand, section 8100 requires that the nomination papers for certain offices be "filed" with the Secretary of State, and among those offices are Representatives in the United States House.[6]

For the moment we may disregard the question of, in a congressional election, where districts often overlap county lines, whether section 8020, requiring initial "delivery" to "the" local elections official, even applies. (By what standard, for example, would Cook have been required to "deliver" her

---

[5] Section 8020 provides in its entirety:

"(a) No candidate's name shall be printed on the ballot to be used at the direct primary unless the following nomination documents are delivered for filing to the county elections official:

"(1) Declaration of candidacy pursuant to Section 8040.

"(2) Nomination papers signed by signers pursuant to Section 8041.

"(b) The forms shall first be available on the 113th day prior to the direct primary election and shall be delivered not later than 5 p.m. on the 88th day prior to the direct primary. The forms may be delivered to the county elections official by a person other than the candidate.

"(c) Upon the receipt of an executed nomination document, the county elections official shall give the person delivering the document a receipt, properly dated, indicating that the document was delivered to the county elections official.

"(d) Notwithstanding Section 8028, upon request of a candidate, the county elections official shall provide the candidate with a declaration of candidacy. The county elections official shall not require a candidate to sign, file, or sign and file, a declaration of candidacy as a condition of receiving nomination papers."

[6] Section 8100 provides in its entirety:

"All nomination documents shall be filed as follows:

"(a) For state offices, United States Senators, *Representatives in Congress*, Members of the State Senate and Assembly, and members of the Board of Equalization, in the office of the Secretary of State.

"(b) For all officers to be voted for wholly within one county, except as provided in subdivision (a), in the office of the elections official of that county." (Italics added.)

papers to the Orange County Registrar of Voters, as distinct from the Los Angeles County Registrar of Voters or the Secretary of State directly?) For the moment we will assume, for sake of argument, that Cook could have delivered her papers to either the Orange County Registrar of Voters or the Los Angeles Registrar of Voters.

■ Even if section 8020 were applicable, though, it makes no difference because another statute, section 8082, has contemplated the scenario where papers are delivered to a local elections official in a race where it is the Secretary of State who actually files the papers. Section 8082 requires that in cases where nomination documents must be "filed" with the Secretary of State, the local elections official is to "forward"—we note, the word is *forward*, not *file*—the documents to the Secretary of State.[7] In the largely duplicative section 8070, the word used is "transmit"; again the Legislature did not use the word "file."[8]

After forwarding, section 13107 is clear that the Secretary of State is *independently* precluded from "accept[ing]" incorrect ballot designations for candidates for Congress. The way section 13107 is structured, subdivision (a) provides the rules governing such designations,[9] while subdivision (b) pre-

---

[7] Section 8082 provides in its entirety:

"All nomination documents that are required to be filed in the office of the Secretary of State, within five days after being left with the county elections official in compliance with Section 8020, shall be forwarded by the county elections official to the Secretary of State, who shall receive and file them. The county elections official *shall forward* with the nomination documents a statement showing the total number of signatures on the nomination document that have not been marked 'not sufficient.' " (Italics added.)

[8] Section 8070 provides in its entirety:

"The elections official *shall transmit* to the Secretary of State the nomination document for each candidate for state office, United States Senator, Representative in Congress, Member of the Senate or Assembly, or the members of the State Board of Equalization." (Italics added.)

[9] Subdivision (a) of section 13107 provides in its entirety:

"(a) With the exception of candidates for Justice of the State Supreme Court or Court of Appeal, immediately under the name of each candidate, and not separated from the name by any line, may appear at the option of the candidate only one of the following designations:

"(1) Words designating the elective city, county, district, state, or federal office which the candidate holds at the time of filing the nomination documents to which he or she was elected by vote of the people, or to which he or she was appointed, in the case of a superior court judge.

"(2) The word 'incumbent' if the candidate is a candidate for the same office which he or she holds at the time of filing the nomination papers, and was elected to that office by a vote of the people, or, in the case of a superior court judge, was appointed to that office.

"(3) No more than three words designating either the current principal professions, vocations, or occupations of the candidate, or the principal professions, vocations, or occupations of the candidate during the calendar year immediately preceding the filing of nomination documents. For purposes of this section, all California geographical names shall be considered to be one word. Hyphenated words that appear in any generally available standard reference

cludes the Secretary of State, "nor any other elections official," from accepting any improper designation.[10]

The issue of the Secretary of State's *independent* duty has been well briefed in Cook's papers supporting her writ petition. Confronted with the problem of this independent duty, Carlson's response is to posit a two-step paradigm, in which the local elections official is precluded from *transmitting* or *forwarding* nomination papers to the Secretary of State. In this two-stage model, this litigation can supposedly be contained to just the local level, obviating any need for the Secretary of State to play a role in the process.

The model must be rejected for no fewer than three reasons. At the most elementary, Carlson's theory is at odds with the prayer in his own petition, which directly requests that Cook's ballot designation as mayor be *deleted*, as distinct from simply not *transmitted* by the local registrar.

A second, and more substantive reason, is that there is no statutory authority for a local elections official to act as some sort of "screener," *protecting* the Secretary of State from ballot designations which the local registrar of voters thinks might not pass muster under section 13107 in those cases where the Secretary of State is the person who files the nomination papers. Carlson's two-stage model would, in effect, give a local elections official veto power over ballot designations which the Secretary of State

dictionary, published in the United States at any time within the 10 calendar years immediately preceding the election for which the words are counted, shall be considered as one word. Each part of all other hyphenated words shall be counted as a separate word.

"(4) The phrase 'appointed incumbent' if the candidate holds an office other than a judicial office by virtue of appointment, and the candidate is a candidate for election to the same office, or, if the candidate is a candidate for election to the same office or to some other office, the word 'appointed' and the title of the office. In either instance, the candidate may not use the unmodified word 'incumbent' or any words designating the office unmodified by the word 'appointed.' However, the phrase 'appointed incumbent' shall not be required of a candidate who seeks reelection to an office which he or she holds and to which he or she was appointed, as a nominated candidate, in lieu of an election, pursuant to Sections 5326 and 5328 of the Education Code or Section 7228, 7423, 7673, 10229, or 10515 of this code."

[10] Subdivision (b) of section 13107 provides:

"(b) Neither the Secretary of State nor any other elections official shall accept a designation of which any of the following would be true:

"(1) It would mislead the voter.

"(2) It would suggest an evaluation of a candidate, such as outstanding, leading, expert, virtuous, or eminent.

"(3) It abbreviates the word 'retired' or places it following any word or words which it modifies.

"(4) It uses a word or prefix, such as 'former' or 'ex-,' which means a prior status. The only exception is the use of the word 'retired.'

"(5) It uses the name of any political party, whether or not it has qualified for the ballot.

"(6) It uses a word or words referring to a racial, religious, or ethnic group.

"(7) It refers to any activity prohibited by law."

might, in the discharge of her office, otherwise accept. In essence, it elevates a party with a ministerial duty to act as a conduit ("forward" and "transmit") into the party who has the last word. In fact, just the opposite is the case. Neither section 8070 nor section 8082 give a local elections official any discretionary or adjudicatory role to play in regard to papers that they must forward or transmit to the Secretary of State.

■ Third, more technically, the key language in section 13107, subdivision (b) is "accept," as the word is used in a context that indicates something greater than a mere ministerial theory of transmittal. A mere forwarder or transmitter does not pass on the substance of a communication to determine whether it might "mislead the voter." (See § 13107, subd. (b)(1).)

The phrase in section 13107, subdivision (b), "Neither the Secretary of State nor any other elections official shall accept a designation . . . ." must be read together with sections 8020 and 8070. Read together, these statutes indicate a purely ministerial duty of transmission or forwarding by the local elections official *in those cases* where the papers must be filed *by* the Secretary of State. On the other hand, in those cases where the Secretary of State is *not* involved (e.g., a purely local election, such as a race for a seat on the county board of supervisors) and the local elections official *is* the person substantively responsible for the acceptance or rejection of a ballot designation, the local official is bound by the criteria in section 13107 just as much as the Secretary of State is in the categories of nonlocal elections—hence the "neither . . . nor" construction of the sentence. But in those cases where the Secretary of State *is* the one who "files" the nomination papers, it is the Secretary of State who determines whether a designation contravenes section 13107. In short, in congressional elections, local elections officials have no power to short circuit ballot designations from going to the Secretary of State.

Given the Secretary of State's *statutorily required* role in the process of congressional primaries, we have here an almost textbook case where she is an indispensable party. Can "complete relief" be given in her absence? No way. Regardless of what the local—perhaps we should say, "a local"—Registrar of Voters may do, the Secretary of State makes the decision.

Does the Secretary of State have an interest in the subject matter of the action? Absolutely, because this action affects the way she does her job—

when the papers are forwarded, she is independently bound not to accept improper ones, *regardless of what a local elections official does*—and, given election deadlines, as a practical matter there is the risk that she would be unable to review the results of a trial in Orange County. In that regard, it is glaringly obvious that the Legislature would have preferred a statewide official to make determinations of the propriety of ballot designations for congressional races, rather than a local one. The risk of inconsistent results would be too high.

And finally, in that very regard, even assuming for sake of argument that local elections officials might have a role in determining ballot designations in congressional elections, the risk of inconsistent results necessarily requires that the statewide office trump the local. There would be a clear risk of conflicting policies regarding such appellations as "mayor" in congressional elections in California if a local official took one position and the Secretary of State takes another. Given section 8100—the key word is file—in contrast with sections 8082 and 8070—forward or transmit—any conflict would necessarily have to resolved in favor of the Secretary of State's position (though ultimately, of course, the Secretary of State's position would have to be in accord with section 13107, as determined by litigation that started in Sacramento).

In a word, the Secretary of State is an indispensable party. And there is no doubt she can be served and made a party, so the case *must* be dismissed, *unless* she is made a party. And, the only way that the case can go forward *if* she is made a party is to have it go forward in Sacramento, not Orange County.

In her petition filed on Monday, March 24, 2008, Cook asked for a peremptory writ of mandate and prohibition commanding the Orange County Superior Court to dismiss proceedings. In our own stay of Cook's deposition later that afternoon, we alerted the parties to the fact that this court was considering issuing such a writ. Given the urgency of the case, there is no time to schedule oral argument. The parties have thus had notice of the possibility of a peremptory writ in the first instance. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let therefore a peremptory writ issue commanding the superior court to vacate its order denying the motion to dismiss and commanding the court to enter a new order granting that motion. All stays previously issued are lifted. Petitioner Cook will recover her costs from real party in interest Carlson.

Rylaarsdam, J., and Ikola, J., concurred.