[No. A123743. First Dist., Div. One. Sept. 4, 2009.]

PAUL CUMMINGS, Plaintiff and Appellant, v.
WALTER STANLEY III et al., Defendants and Respondents.

**COUNSEL**

Law Office Of George G. Benetatos and George G. Benetatos for Plaintiff and Appellant.

Bell, McAndrews & Hiltachk and Charles H. Bell, Jr., for California Republican Party as Amicus Curiae on behalf of Plaintiff and Appellant.

Baker & McKenzie, Tod L. Gamlen and Gerald M. Salcido for Defendants and Respondents.

OPINION

GRAHAM, J.*—Plaintiff brought the present action pursuant to Elections Code sections 16100, subdivision (b), and 16440, subdivision (a), to contest the eligibility of defendants Walter Stanley III, Lea Smart, Casey Fargo, Deslar Patten, Christopher Kuhn, John W. Bartlett, and David Latour, for election to positions on the Alameda County Republican Central Committee (the Committee).[1] The trial court dismissed the action on the ground that plaintiff failed to file the action within the statutory five-day time limit for primary election contests. We conclude that an election of party central committee members is not a primary election and is governed by a 30-day time limit to file a contest to elections other than primary elections. We therefore find that plaintiff timely filed his election contest, and reverse the judgment.

### STATEMENT OF FACTUAL AND PROCEDURAL HISTORY

On June 3, 2008, defendants were elected as members of the Committee from various districts within Alameda County. On July 8, 2008, the "official canvass" for the election was completed by the Alameda County Board of Supervisors, and defendants were declared elected to office as members of the Committee. Plaintiff was a qualified elector of Alameda County and chairman of the Committee when the election occurred, although he did not reside and vote in any of the assembly districts from which defendants were elected.

On July 25, 2008, plaintiff filed a statement of election contest (the statement) in which he claimed that respondents were "not eligible to seek and hold membership" in the Committee under section 8001, subdivision (a). Plaintiff also asserted that the Registrar of Voters of Alameda County erroneously declared defendants elected to the Committee despite their lack of eligibility to "hold membership" and lack of compliance with the eligibility requirements of section 8001, subdivisions (a) and (b). He requested a finding that defendants were "erroneously elected," and an order setting aside their election as members of the Committee.

Defendants filed answers in which they generally denied the allegations of the statement and asserted defenses or objections, one of which is that the action "is untimely" due to the failure of plaintiff to file the statement within the five-day time limit specified in section 16421 to contest a primary election. They requested dismissal of the action.

---

*Retired judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Elections Code unless otherwise indicated.

A hearing on the election contest was held on November 12, 2008, at which the trial court considered the declarations and other documentary evidence presented by the parties. The court found that the election of June 3, 2008, which resulted in the declaration of defendants as elected members of the Committee, was a primary rather than general election. As a result, plaintiff was bound by the five-day time limit to file the primary election contest (§ 16421), not the 30-day time limit that governs general elections (§ 16401). Therefore, plaintiff's action was dismissed as "untimely" filed. This appeal followed.

## Discussion

Certain facts in the present appeal are undisputed: the election of defendants occurred on June 3, 2008; the result of the election was officially certified by the Alameda County Board of Supervisors on July 8, 2008; plaintiff filed the election contest on July 25, 2008, more than five days but less than 30 days after the official canvass was completed. The parties agree that if plaintiff has contested a "primary election" his contest is untimely and cannot proceed, but if he has contested a "general election" result his action is timely.

The dispute before us focuses on the nature of the election. Plaintiff claims that defendants were not *nominated* in a primary election, but rather were *elected* as members of the Committee in a "general election," and thus under section 16401, subdivision (d), he had 30 days after the official declaration of the result to file the election contest. Defendants maintain that the June 3, 2008, election is specifically defined as a "direct primary election" in section 316, and plaintiff did not meet the applicable five-day deadline of section 16421 to file his election contest.

## I. *The Standing of Plaintiff to Bring the Present Action.*

Before proceeding to the merits of plaintiff's claim that he has filed a timely contest to a general election, we confront two preliminary issues raised by defendants in this appeal. First, defendants argue that plaintiff "has no standing to contest" the election "under either of two statutory grounds provided by the Legislature." They maintain that plaintiff cannot bring an election contest under section 16100, as neither does he reside nor may he vote in any of the districts within Alameda County in which defendants were elected.[2] They also claim that he cannot contest the election under section 16101, because he was not a "candidate at a primary election" as required by that statute.

---

[2] Plaintiff resides in Assembly District 16 in Alameda County, while defendants were elected from other assembly districts.

■ A lack of standing is a jurisdictional defect to an action that mandates dismissal. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438 [261 Cal.Rptr. 574, 777 P.2d 610]; *Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1592 [24 Cal.Rptr.3d 50].) " '[A] complaint by a party lacking standing fails to state a cause of action by the particular named plaintiff, inasmuch as the claim belongs to somebody else. [Citation.] A more accurately stated rationale would be that there is a defect in the parties, since the party named as plaintiff is not the real party in interest.' (*Cloud v. Northrop Grumman Corp.* [(1998)] 67 Cal.App.4th [995,] 1004 [79 Cal.Rptr.2d 544] . . . .) 'Plaintiff's lack of standing to sue on the claim is treated as a "jurisdictional" defect and is not waived by defendant's failure to raise it by demurrer or answer: "[C]ontentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding." ' (Weil [&] Brown, Cal. Practice Guide[: Civil Procedure Before Trial (The Rutter Group 2003)] ¶ 2:78, p. 2-21, italics omitted.) 'Lack of standing negates existence of a cause of action and is not waived by failure to object; it can even be raised for the first time on appeal.' (*Id.*, ¶ 2:81.1, p. 2-22.)" (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1095 [9 Cal.Rptr.3d 286] (dis. opn. of Grignon, Acting P. J.).)

■ Plaintiff's authority and standing to challenge the election of defendants to the Committee must be based exclusively on section 16100.[3] (*California Family Bioethics Council, LLC v. California Institute for Regenerative Medicine* (2007) 147 Cal.App.4th 1319, 1347 [55 Cal.Rptr.3d 272]; see also *Bradley v. Perrodin* (2003) 106 Cal.App.4th 1153, 1173 [131 Cal.Rptr.2d 402]; *People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 932–933 [131 Cal.Rptr.2d 274]; *Alden v. Superior Court* (1963) 212 Cal.App.2d 764, 768 [28 Cal.Rptr. 387].) " 'Strict rules embodied in the Elections Code govern a court's review of a properly contested election.' " (*Friends of Sierra Madre v. City of Sierra Madre* (2001) 25 Cal.4th 165, 192 [105 Cal.Rptr.2d 214, 19 P.3d 567].) "The bases for a *postelection* challenge, i.e., an 'election contest,' are enumerated in section 16100. And, as our Supreme Court pointed out in *Friends of Sierra Madre v. City of Sierra Madre, supra*, 25 Cal.4th 165, these grounds are exclusive: 'That the court's authority to invalidate an election is limited to the bases for contest specified in Elections Code section 16100 and that section is exclusive is strongly suggested by the nature of the grounds for contest therein enumerated.' [Citations.]" (*McKinney v. Superior Court* (2004) 124 Cal.App.4th 951, 958

---

[3] The only alternative statutory authority for bringing an election contest, section 16101, applies only to a "candidate at a primary election" who may "contest the right of another candidate to nomination to the same office." Plaintiff acknowledges that neither was he a candidate for election to any of the same offices on the Committee, nor were defendants candidates for "nomination" to the same office, as required by section 16101.

[21 Cal.Rptr.3d 773], fn. omitted (*McKinney*); see also *Horwath v. City of East Palo Alto* (1989) 212 Cal.App.3d 766, 773–774 [261 Cal.Rptr. 108].)

◼ Section 16100 specifies that, "Any elector of a county, city, or of any political subdivision of either may contest any election held therein," on the ground, among others, "(b) That the person who has been declared elected to an office was not, at the time of the election, eligible to that office."[4] Plaintiff was an elector of Alameda County in which the election was held,[5] and claims that defendants were not eligible for the office of Committee member. Defendants' effort to challenge plaintiff's standing by pointing out that he was an elector in one district while they were elected in other districts within the county is unavailing. The election was for positions on the *county* Committee, and the statute explicitly and unambiguously grants the right to an elector of the county to contest an election. The provisions of section 16100 " 'allow an elector of a given city or *county* to challenge an *election held therein* on six specified grounds. . . .' [Citation.]" (*Friends of Sierra Madre v. City of Sierra Madre, supra*, 25 Cal.4th 165, 194, italics added.) The language of the statute on this point is eminently clear, and we see no reason to depart from it. (*Friends of Lagoon Valley v. City of Vacaville* (2007) 154 Cal.App.4th 807, 829–830 [65 Cal.Rptr.3d 251]; *Howard Jarvis Taxpayers Assn. v. County of Orange* (2003) 110 Cal.App.4th 1375, 1381 [2 Cal.Rptr.3d 514].) Plaintiff is an aggrieved party who has standing to bring the present action and appeal.

---

[4] Section 16100 reads in full: "Any elector of a county, city, or of any political subdivision of either may contest any election held therein, for any of the following causes:

"(a) That the precinct board or any member thereof was guilty of malconduct.

"(b) That the person who has been declared elected to an office was not, at the time of the election, eligible to that office.

"(c) That the defendant has given to any elector or member of a precinct board any bribe or reward, or has offered any bribe or reward for the purpose of procuring his election, or has committed any other offense against the elective franchise defined in Division 18 (commencing with Section 18000).

"(d) That illegal votes were cast.

"(e) That eligible voters who attempted to vote in accordance with the laws of the state were denied their right to vote.

"(f) That the precinct board in conducting the election or in canvassing the returns, made errors sufficient to change the result of the election as to any person who has been declared elected.

"(g) That there was an error in the vote-counting programs or summation of ballot counts."

[5] According to section 321, " 'Elector' means any person who is a United States citizen 18 years of age or older and a resident of an election precinct at least 15 days prior to an election." (See also *Cook v. Superior Court* (2008) 161 Cal.App.4th 569, 573 [73 Cal.Rptr.3d 895].)

## II. *Subject Matter Jurisdiction.*

Defendants also present the related argument that the trial court had "no subject matter jurisdiction" over the election contest brought by plaintiff. Defendants offer several reasons for the court's lack of subject matter jurisdiction in the case, all based on the premise that section 16100 does not authorize any challenge to an election to the Committee. First, they claim that section 16100 does not apply to an " 'election' to a county central committee," but rather only to elections in which all " 'electors' may participate, that is, only to nonpartisan elections." Defendants further argue that the Committee is neither a "public office" nor a "political subdivision of Alameda County or any city therein," as required by section 16100.

■ As with the standing argument, defendants' failure to raise the issue in the trial court is no obstacle to our consideration of it here. "Jurisdictional issues are never waived and may be raised at any time." (*Briggs v. Resolution Remedies* (2008) 168 Cal.App.4th 1395, 1400 [86 Cal.Rptr.3d 396].) " 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.]' [Citation.] 'The adequacy of the court's subject matter jurisdiction must be addressed whenever that issue comes to the court's attention.' [Citation.]" (*Totten v. Hill* (2007) 154 Cal.App.4th 40, 46 [64 Cal.Rptr.3d 357].)

■ " 'Lack of jurisdiction' is a term used to describe situations in which a court is without authority to act." (*Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1040 [126 Cal.Rptr.2d 310]; see also *Bank of America v. Jennett* (1999) 77 Cal.App.4th 104, 118–119 [91 Cal.Rptr.2d 359].) "Subject matter jurisdiction is conferred by constitutional or statutory law. [Citations.] The California Supreme Court has defined subject matter jurisdiction thusly: 'Subject matter jurisdiction . . . is the power of the court over a cause of action or to act in a particular way.' [Citations.] By contrast, the lack of subject matter jurisdiction means the entire absence of power to hear or determine a case; i.e., an absence of authority over the subject matter." (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42 [12 Cal.Rptr.3d 711].) "Thus, acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of stare decisis, are described as acts in 'excess of jurisdiction.' [Citations.]" (*Wozniak v. Lucutz, supra,* at p. 1040.)

■ We find nothing in section 16100 that imposes the limitations and prohibitions on the authority of the courts to hear election contests that defendants have suggested. First, while we may agree with defendants that

membership in a political party's county central committee has not been defined as a "public office" (*Moore v. Panish* (1982) 32 Cal.3d 535, 544–545 [186 Cal.Rptr. 475, 652 P.2d 32]), the language of section 16100 does not provide or in any way insinuate that only an election to a public office may be the subject of a contest under section 16100. The statute unambiguously declares that, "*Any elector of a county*, city, or of any political subdivision of either may contest *any election held* therein," on the grounds stated, without exception for elections to party county central committees, or any added requirement that the office be a "nonpartisan" one. (§ 16100, italics added.) " 'Election' means any election including a primary that is provided for under this code." (§ 318.) An election to a party central committee position is explicitly defined in the code as an election (§§ 321, 324, 1000). (See *Moore v. Panish, supra*, at p. 545.)

We also reject defendants' claim that a party central committee election is not an election to a county (or city) office or a designated "political subdivision" of a county, within the meaning of section 16100. The Committee may not be a political subdivision of Alameda County, but plaintiff was an elector of the county, and his challenge is to an "election held therein." The cases relied upon by defendants to challenge the court's subject matter jurisdiction in the present case are inapposite. Those cases denied subject matter jurisdiction in actions brought to contest elections to positions with fire protection and irrigation districts, which, the courts found, were neither elections in political subdivisions of a county, nor held in a county, city, or any political subdivision of either, within the meaning of prior, somewhat more narrow, restrictive versions of section 16100.[6] (Cf. *Castle R. C. Fire P. Dist. v. Sup. Ct.* (1951) 105 Cal.App.2d 816, 818–820 [234 P.2d 726]; *Hunt v. Superior Court, supra*, 93 Cal.App.2d 504, 506–508; *Huck v. Rathjen, supra*, 66 Cal.App. 84, 85.) Here, in contrast, plaintiff, an elector in Alameda County, has contested an election held in that county. Nothing more is demanded under section 16100 to authorize an election contest.

■ Again, we fall back on the fundamental rule "that in statutory interpretation, 'where the language is clear, its plain meaning should be followed. [Citation.]' [Citation.]" (*Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 36 [49 Cal.Rptr.3d 95].) The election contest brought by

---

[6] For instance, in *Huck v. Rathjen* (1924) 66 Cal.App. 84, 85 [225 P. 33], the court dealt with former section 1111 of the Code of Civil Procedure, which at the time read in material part: " 'Any elector of a county, city and county, city, or of any political subdivision of either, may contest the right of any person declared elected to an office to be exercised therein.' " The court held: "it clearly appears that an irrigation district is not a political subdivision of a county and that a contest of the right of a person declared elected to the office of director thereof is not authorized by the provisions of section 1111." (*Huck v. Rathjen*, at pp. 85–86; see also *Hunt v. Superior Court* (1949) 93 Cal.App.2d 504, 506 [209 P.2d 411].)

plaintiff falls directly within the scope of section 16100, and the statute grants the courts subject matter jurisdiction over the action.

III. *Plaintiff's Failure to Exhaust Preelection Remedies.*

Defendants next contend that plaintiff is precluded from bringing an election contest of any kind due to his failure to "seek an available pre-election remedy" to challenge the eligibility of the candidates. Defendants claim that plaintiff "did not take advantage of the available pre-election remedy provided by" section 13314,[7] although as Republican Party chairman he was sent a sample ballot with the names of the candidates "twenty-nine days before the June 3, 2008, election." To support their exhaustion argument, defendants direct our attention to *McKinney v. Superior Court, supra,* 124 Cal.App.4th at page 954, where a voter brought "a postelection challenge" to a runoff election for mayor "on the theory that one of the losers in the election—a write-in candidate at that—was ineligible for office and her presence affected the outcome." The court found that the challenge "should have been brought *before* the election" under section 13314. (*McKinney, supra,* at p. 954.)

 For several reasons we find defendants' exhaustion of remedies defense unavailing here. First, defendants did not raise an exhaustion of remedies defense in the trial court. We agree with the weight of recent cases that have concluded a defendant waives the defense by failing timely to assert it. (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 135–136 [68 Cal.Rptr.3d 568]; *Mission Housing Development Co. v. City and County of San Francisco* (1997) 59 Cal.App.4th 55, 67 [69 Cal.Rptr.2d 185]; *Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster* (1997) 52 Cal.App.4th 1165, 1215 [61 Cal.Rptr.2d 447]; *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy* (1992) 4 Cal.App.4th 963, 976 [6 Cal.Rptr.2d 193]; *Wallis v. Farmers Group, Inc.* (1990) 220 Cal.App.3d 718, 735–736

---

[7] Section 13314 provides: "(a)(1) Any elector may seek a writ of mandate alleging that an error or omission has occurred, or is about to occur, in the placing of any name on, or in the printing of, a ballot, sample ballot, voter pamphlet, or other official matter, or that any neglect of duty has occurred, or is about to occur.

"(2) A peremptory writ of mandate shall issue only upon proof of both of the following:

"(A) that the error, omission, or neglect is in violation of this code or the Constitution, and

"(B) that issuance of the writ will not substantially interfere with the conduct of the election.

"(3) The action or appeal shall have priority over all other civil matters.

"(b) Venue for a proceeding under this section shall be exclusively in Sacramento County in any of the following cases:

"(1) The Secretary of State is named as a real party in interest or as a respondent.

"(2) A candidate for statewide elective office is named as a party.

"(3) A statewide measure that is to be placed on the ballot is the subject of the proceeding."

[269 Cal.Rptr. 299], disapproved on other grounds in *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 394, fn. 2 [46 Cal.Rptr.3d 668, 139 P.3d 56]; *Sacramento County Deputy Sheriffs' Assn. v. County of Sacramento* (1990) 220 Cal.App.3d 280, 286 [269 Cal.Rptr. 6]; *Doster v. County of San Diego* (1988) 203 Cal.App.3d 257, 260 [251 Cal.Rptr. 507]; *Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 222–223 [239 Cal.Rptr. 470].) We recognize that a split of authority exists on the issue of whether an exhaustion of remedies defense is waived by failure to assert it in a timely fashion at trial. We choose to follow the influential trend of recent authority that exhaustion does not implicate subject matter jurisdiction, but rather is a judicially created rule of procedure, with numerous exceptions, which must be applied by the courts equitably and depends on a qualitative analysis on a case-by-case basis of the facts presented at trial.[8] Hence, we find a waiver of a claim of exhaustion appropriate on appeal if the defense was not raised below. (*Mokler v. County of Orange, supra*, at pp. 135–136; *Green v. City of Oceanside, supra*, 194 Cal.App.3d at pp. 222–223.)

Also defendants have not referred us to evidence in the record that plaintiff, even if he had a list of candidates, knew or had reason to know of their eligibility deficiencies before the election. Many other facts related to facets of the exhaustion defense and its exceptions are not before us due to the failure of the issue to be presented or litigated in the trial court. Furthermore, the *McKinney* decision upon which defendants rely in claiming exhaustion has limited application, and perhaps none in the present case. *McKinney* presented the unusual situation of a postelection challenge by a candidate based on the ineligibility of the *runner-up*, not the elected official. The court observed: "Although election results can be challenged under section 16100 on the ground that the winner is ineligible, the statute does not contemplate challenges based on the fact that one of the runners-up is ineligible." (*McKinney, supra*, 124 Cal.App.4th at p. 954.) Additionally, the court made a point of clarifying that the election contestant "specifically disavowed any reliance on section 16100" to contest the election, and the court explicitly "express[ed] no opinion here whether any of the subdivisions of section 16100 would otherwise apply to this case." (*Id.* at p. 959.) We therefore conclude defendants are not entitled to present the exhaustion defense to support the trial court's ruling, at least in this appeal.

---

[8] The exceptions include " 'situations where the agency indulges in unreasonable delay [citation], when the subject matter lies outside the administrative agency's jurisdiction, when pursuit of an administrative remedy would result in irreparable harm, when the agency is incapable of granting an adequate remedy, and when resort to the administrative process would be futile because it is clear what the agency's decision would be.' " (*Mokler v. County of Orange, supra*, 157 Cal.App.4th at p. 134, quoting *Green v. City of Oceanside, supra*, 194 Cal.App.3d 212, 222.)

## IV. *The Timeliness of Plaintiff's Election Contest.*

█ We proceed to the substance of the present appeal, necessitating an assessment of the statutory distinction between general and primary elections and the respective time limits governing the filing of contests to them. Section 16100 furnishes the grounds for contesting "any election," while section 16101 delineates the grounds for contesting a "primary election." Both statutes specify that lack of eligibility for the office constitutes a ground for an election contest. The time constraints for filing a contest to "any election" are found in division 16, chapter 5, article 1, of the code, which states in section 16400 that an elector must "file with the clerk of the superior court having jurisdiction a written statement" setting forth the name of the defendant, the office and the grounds for the contest. Section 16401, subdivision (d), provides that the statement of contest must be filed within 30 days "after the declaration of the result of the election by the body canvassing the returns thereof." Article 2 of chapter 5 of division 16 of the code governs a "primary election," and provides in section 16421 that the affidavit of contest must be filed "within five days after the completion of the official canvass by the board of supervisors of the county last making the declaration." Hence, a contest to a primary election must comply with the five-day time limit of section 16421; contests to any other elections are governed by section 16401, which imposes a 30-day time limit.

█ To find that the election of defendants as members of the Committee was a primary election the trial court relied almost exclusively upon section 316, which states: " '*Direct primary*' is the primary election held on the first Tuesday after the first Monday in June in each even-numbered year, to *nominate candidates* to be voted for at the ensuing general election *or to elect members of a party central committee.*" (Italics added.) The language of section 316 thus specifically provides that a "direct primary" is comprised of the election of party central committee members, along with the primary election to nominate candidates for the general election, and is held on a particular date. The more difficult task before us is to determine if an election to a party central committee is also a "primary election" for purposes of the election contest provisions of sections 16401, subdivision (d), and 16421.

█ "When we interpret the meaning of statutes, our fundamental task is to ascertain the aim and goal of the lawmakers so as to effectuate the purpose of the statute." (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 928 [87 Cal.Rptr.3d 365].) "We take a three-step sequential approach to interpreting statutory language. [Citation.] First, we will examine the language at issue, giving 'the words of the statute their ordinary, everyday

meaning.' [Citations.] If we conclude that the statutory meaning is free of doubt, uncertainty, or ambiguity, the language of the statute controls, and our task is completed. [Citations.] Second, if we determine that the language is unclear, we will attempt to determine the Legislature's intent as an aid to statutory construction. [Citation.] In attempting to ascertain that intent, 'we must examine the legislative history and statutory context of the act under scrutiny. [Citations.]' [Citation.] Third, if the clear meaning of the statutory language is not evident after attempting to ascertain its ordinary meaning or its meaning as derived from legislative intent, we will 'apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable [citations], . . . practical [citations], in accord with common sense and justice, and to avoid an absurd result [citations].' [Citation.]" (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1411 [60 Cal.Rptr.3d 719].) "The interpretation of statutes presents a question of law for our independent review. [Citation.] 'As the matter is a question of law, we are not bound by evidence on the question presented below or by the lower court's interpretation. [Citations.]' [Citation.]" (*Katz v. Los Gatos-Saratoga Joint Union High School Dist.* (2004) 117 Cal.App.4th 47, 53 [11 Cal.Rptr.3d 546]; see also *Amdahl Corp. v. County of Santa Clara* (2004) 116 Cal.App.4th 604, 611 [10 Cal.Rptr.3d 486].)

When examined superficially and in isolation, the language of section 316 classifies the election of members of a party central committee as part of a *direct primary* election. When we engage in a more thorough analysis of the statutes that govern the filing of election contests, however, the meaning of the statutory language becomes far from obvious. To the contrary, to discern the meaning of the law we must proceed through the thicket of a statutory scheme that is hardly a model of clarity or cohesiveness.

 To begin with, although section 316 defines the election of members of a party central committee "held on the first Tuesday after the first Monday in June in each even-numbered year" as a direct primary, an election held on the same date is also defined elsewhere as a general election. According to section 324, subdivision (a)(2), a "General election" means, any "statewide election held on a regular election date as specified in Section 1000." In turn, section 1000 explicitly includes an election held, "The first Tuesday after the first Monday in June in each year." (§ 1000, subd. (c).) " 'A regular or general election is one which recurs at stated intervals as fixed by law; it is one which occurs at stated intervals without any superinducing cause other than the efflux of time. . . . In application of the foregoing rules, it is held that the term "general election" embraces a primary election occurring at regular

intervals . . . [.]' [Citation.]" (*County of Alameda v. Sweeney* (1957) 151 Cal.App.2d 505, 511–512 [312 P.2d 419].)

Further, section 341 provides: " 'Primary election' includes all primary *nominating elections* provided for by this code." (Italics added.) As plaintiff has consistently pointed out, the election of party central members is just that, a final election, not a nominating process. The clash of these provisions creates an ambiguity unresolved by the first step of statutory construction, and compels us to ascertain the meaning of the statutes by undertaking a commonsense examination of legislative intent through scrutiny of the statute's purpose, history, and public policy considerations. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563]; *Sisemore v. Master Financial, Inc., supra*, 151 Cal.App.4th at p. 1412; *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 583 [48 Cal.Rptr.3d 340].)

 We commence by observing that a "direct primary" as described in section 316 is not also necessarily a "primary election" as defined in section 341. The term "direct primary" encompasses both the June primary election to nominate candidates and the election on the same date to "*elect* members of a party central committee." (§ 316, italics added.) Section 341 defines a "primary election" in a more limited sense to include only "*nominating* elections." (Italics added.) Thus, a direct primary is not exclusively a primary election; the definitions are distinct. A direct primary serves to both nominate candidates for general elections and to elect party central committee members, whereas a primary election is one that results in nominations rather than final elections to office. Had the Legislature intended to incorporate the election of party central committee members into the definition of primary elections, the same language added to section 316 could also have been specifically included in section 324. That it was not, and that primary election is distinctly defined to include *nominating* elections, is indicative to us of legislative intent. " ' "[W]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." ' [Citations.]" (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1118 [29 Cal.Rptr.3d 262, 112 P.3d 647].) The disparate language of the two statutes leads us to conclude that a primary election may be a component of a direct primary as described in section 316, but a direct primary is not equated with a primary election as defined in section 341. We are not inclined to imply into the definition of "primary election" in section 341 the election of party central committee members, when the Legislature has not seen fit expressly to do so. (See

*People v. Bland* (2002) 28 Cal.4th 313, 337 [121 Cal.Rptr.2d 546, 48 P.3d 1107]; *State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 417 [57 Cal.Rptr.3d 156]; *Dunn-Edwards Corp. v. Bay Area Air Quality Management Dist.* (1992) 9 Cal.App.4th 644, 658 [11 Cal.Rptr.2d 850].)

■■■ We are also convinced that the election of party central committee members does not have the essential characteristics of a primary election as defined in section 341. The consideration of foremost consequence to us is that the election of Committee members constitutes the elector's final choice among candidates in a single ballot proceeding. The successful candidates are not selected for further consideration, they are elected. (See *County of Alameda v. Sweeney, supra,* 151 Cal.App.2d at pp. 510–511; *Bigelow v. Board of Supervisors* (1912) 18 Cal.App. 715, 719 [124 P. 554].) "Members of county central committees" of the qualified political parties "are to be *elected* at every direct primary election." (*Moore v. Panish, supra,* 32 Cal.3d at p. 542, italics omitted.) The code does not provide for nomination of committee candidates. (*Ibid.*) In contrast, the "effect of [a] primary election" is "not to 'elect' any person to the office . . . but merely to nominate persons who should be candidates at the ensuing election" at which the office holder "would actually be chosen and elected." (*MacDonald v. Neuner* (1935) 5 Cal.App.2d 751, 752 [43 P.2d 813].) The purpose of a primary election under California law "is to provide [the] machinery for the selection of candidates to be voted for in the ensuing general election. To that extent, and in so far as it appears from that law itself and no other, an election held pursuant to its provisions is a primary and not a general election. The election of a candidate to office is not contemplated by that act." (*McClintock v. Abel* (1937) 21 Cal.App.2d 11, 13 [68 P.2d 273] (*McClintock*).) ■■■ A primary election is transmuted in legal effect into a general election for a nonpartisan office where a candidate receives a majority of the votes cast, and is then declared elected to office. (§ 8140, formerly Cal. Const., art. II, § 2 3/4; *Fields v. Eu* (1976) 18 Cal.3d 322, 325, fn. 1 [134 Cal.Rptr. 367, 556 P.2d 729]; *Pollack v. Hamm* (1970) 3 Cal.3d 264, 268, fn. 3 [90 Cal.Rptr. 181, 475 P.2d 213]; *County of Alameda v. Sweeney, supra,* at pp. 510–511; *Donnellan v. Hite* (1956) 139 Cal.App.2d 43, 46 [293 P.2d 158], disapproved on another ground in *Knoll v. Davidson* (1974) 12 Cal.3d 335, 343 [116 Cal.Rptr. 97, 525 P.2d 1273].) The election of party central committee members need not be transmuted to a general election; it is in nature and effect a final general election from the outset.

Thus, in *Doran v. Biscailuz* (1954) 128 Cal.App.2d 55, 56 [274 P.2d 691] (*Doran*), the plaintiff and defendant were both candidates whose names appeared on the ballot at the June direct primary election for the office of

sheriff. The defendant received a majority of all the votes cast at the election, and was declared elected by reason of the provisions of former article II, section 2 3/4 of the California Constitution. The plaintiff, who received the second greatest number of votes cast, instituted contest proceedings by filing an affidavit with the superior court, on the ground that the defendant was not qualified to be a candidate for the office of sheriff. On appeal from a judgment entered in his favor, the defendant presented the argument that the plaintiff should have brought his action under the provisions of the code that describe "the procedure to be followed in contesting a nomination not an election to office." (*Doran, supra*, at pp. 59–60.) Citing the decision in *McClintock, supra*, 21 Cal.App.2d at page 16, the court in *Doran* agreed that "the procedure for contest of a nomination prescribed by the then applicable statute, the Direct Primary Law, did not control the situation where a candidate was elected to office at the primary election." (*Doran, supra*, at p. 60.) In such a case, the plaintiff's remedy was to proceed under the code sections "describing the procedure for contest of general elections. The Legislature could not have intended that a contestant to an election where a candidate was elected to office at the primary election be without remedy. On the contrary, the Legislature has demonstrated its intent to provide a comprehensive system for the contest of elections. In *McClintock*[, at page] 16 . . . , the court stated that: 'The effect of section 2 3/4 of article II of the Constitution has been to transmute a primary election held for the purpose of nominating candidates, into a general election of those nonpartisan officers receiving in the primary a majority of all votes cast for their respective offices.' " (*Ibid.*) The allegations of the plaintiff's contest petition relating to the primary election were found to be "surplusage" that "should have been stricken." (*Id.* at p. 61.)

The principle that an election contest must be pursued in accordance with the general procedures enumerated in sections 16400 and 16401 where the result contested was an election rather than nomination for office was illustrated in a context more persuasive to this appeal in the *McClintock* case. The plaintiff and defendant in *McClintock* were the "only candidates for the office of supervisor whose names appeared on the ballot" in an August direct primary in Kern County. (*McClintock, supra*, 21 Cal.App.2d at p. 12.) After the defendant was found to have received the majority of votes cast for the office and "a certificate of election was issued to him," the plaintiff filed a contest to the election. (*Ibid.*) The defendant sought to dismiss the contest on the ground that it was "filed after the time allowed by law." (*Ibid.*)

The court in *McClintock* categorically declared that the summary legislative machinery provided for the judicial determination of contests of "nominations . . . does not concern itself with elections." (*McClintock, supra*,

21 Cal.App.2d at p. 15.) The necessity of "promptness of decision" in a contest of a nomination was found by the court to be a policy "of prime importance, for the officer charged with the duty of having the ballots printed for the general election must know the names of all the candidates which are to appear on such ballots." (*Id.* at pp. 15–16.) The court also recognized "that the contests provided for in the Direct Primary Law are between candidates for *nomination* for office only and do not contemplate the contest of the *election* of a candidate." (*Id.* at p. 16.) The court concluded: "The Direct Primary Law provides no machinery for the contest of the election of a majority candidate in the primary. It follows that the time limitations on instituting contests and taking appeals contained in section 28a of the Direct Primary Law apply only to a contest of a nomination in a primary election. They cannot apply to the instant case because defendant was declared elected, not merely nominated as a candidate for the office of supervisor of Kern County." (*Ibid.*) Instead, the court found that section "1111 et seq. of the Code of Civil Procedure [the predecessor of Elec. Code, § 16401] sets up legal machinery for the contest of an election to a public office. This chapter of the Code concerns itself with contests of *elections* and has nothing to do with the contest of a *nomination* in a primary election. As we are dealing with the contest of an election of an officer to a nonpartisan office the provisions of section 1111 et seq. of the Code of Civil Procedure are controlling here," including the time limit of " 'thirty days after the declaration of the result of the election by the body canvassing the returns thereof . . .' " to file an election contest. (*Id.* at pp. 16–17.)

As in *McClintock*, the policy that underlies the five-day time limit to file contests to nominations—to effectuate quick judicial decisions as necessary to allow timely printing of ballots for the forthcoming general election—has no bearing here. Defendants have been finally elected to positions on the Committee, not by invocation of section 8140 as in *McClintock*, but through the explicit terms of section 8144, which provides for central committee elections. We realize that defendants have not been elected to nonpartisan office as was the defendant in *McClintock*,[9] but the objective of the statutory scheme remains the same, and does not demand imposition of the exceedingly brief five-day time limit to file a contest to the election of defendants as Committee members.[10] Most importantly, the distinction in the offices does not alter the fact that the result in the present case, as in *McClintock*, was a

[9] "[Former] [s]ection 37 [now section 337] defines 'nonpartisan office' as 'an office for which no party may nominate a candidate'; conversely, [former] section 36 [now section 334] defines a partisan office as one for which a party may nominate a candidate." (*Unger v. Superior Court* (1984) 37 Cal.3d 612, 616 [209 Cal.Rptr. 474, 692 P.2d 238].)

[10] We observe that none of the amendments to the Election Code following the decision in *McClintock*, made any substantive changes to the law. The uncodified provisions in sections 3 to 5 of Statutes 1994, chapter 920, provide: "SEC. 3. It is the intent of the Legislature in enacting this act to reorganize and clarify the Elections Code and thereby facilitate its administration.

final election rather than a nomination. As such, the election does not fall within the scope of the definition of a primary election set out in section 341.

 Defendants' assertion that section 8001 "equates candidacy for a party central committee with a *nomination*" is unpersuasive. Subdivision (a) of section 8001 specifies the requirements for filing for "candidacy for a partisan office *or* for membership on a county central committee," and subdivision (b) adds in pertinent part: "The elections official shall attach a certificate to the declaration of candidacy showing the date on which the candidate registered as intending to affiliate with the political party *the nomination of which he seeks*, and indicating that the candidate has not been affiliated with any other qualified political party for the period specified in subdivision (a) immediately preceding the filing of the declaration."[11] (Italics added.) The "nomination" designation in subdivision (b) has limited reference to candidacy for partisan office mentioned in subdivision (a), not to candidacy for a party central committee. Section 8001 does not provide that election for membership on a county central committee is a nomination within the meaning of section 316.

---

The Legislature intends that the changes made to the Elections Code, as reorganized by this act, have only technical and nonsubstantive effect. Hence, no change made by this act shall be construed to create any new right, duty, or other obligation that did not exist on the effective date of this act, or result in the limitation or termination of any right, duty, or other obligation that existed on the effective date of this act. [¶] SEC. 4. The Legislature finds that the reorganization of the Elections Code pursuant to this act, in view of the nonsubstantive statutory changes made, will not result in new or additional costs to local agencies responsible for the conduct of elections or charged with any duties or responsibilities in connection therewith. [¶] SEC. 5. Any section of any act enacted by the Legislature during the 1994 calendar year that takes effect on or before January 1, 1995, and that amends, amends and renumbers, adds, repeals and adds, or repeals a section with the same number as a section repealed or added by this act, shall prevail over this act, whether that act is enacted prior to, or subsequent to, this act." (Stats. 1994, ch. 920, §§ 3–5, p. 5163.)

[11] Section 8001 reads in full: "(a) No declaration of candidacy for a partisan office or for membership on a county central committee shall be filed, by a candidate unless (1) at the time of presentation of the declaration and continuously for not less than three months immediately prior to that time, or for as long as he has been eligible to register to vote in the state, the candidate is shown by his affidavit of registration to be affiliated with the political party the nomination of which he seeks, and (2) the candidate has not been registered as affiliated with a qualified political party other than that political party the nomination of which he seeks within 12 months, or, in the case of an election governed by Chapter 1 (commencing with Section 10700) of Part 6 of Division 10, within three months immediately prior to the filing of the declaration.

"(b) The elections official shall attach a certificate to the declaration of candidacy showing the date on which the candidate registered as intending to affiliate with the political party the nomination of which he seeks, and indicating that the candidate has not been affiliated with any other qualified political party for the period specified in subdivision (a) immediately preceding the filing of the declaration. This section shall not apply to declarations of candidacy filed by a candidate of a political party participating in its first direct primary election subsequent to its qualification as a political party pursuant to Section 5100."

Both the history and objectives of the election contest laws are furthered by finding that only a contest to a *nomination* for office—that is, a primary election under section 316—must be filed within the five-day time limit. To exclude the election of central committee members from the reach of the primary election contest requirements also properly harmonizes the specific definition of primary election in section 316 with the purpose and distinct requirements of the competing election contest statutes (§§ 16100, 16101, 16400, 16401 & 16421). (See *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 218 [46 Cal.Rptr.3d 73, 138 P.3d 220] [provisions that are related " 'should be read together and construed in a manner that gives effect to each, yet does not lead to disharmony with the others' "]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323] ["[S]tatutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible."].) And finally, in our interpretation of the statutes we are guided by the directive to accomplish common sense to make the statutes workable and reasonable. (*Wasatch Property Management v. Degrate, supra*, 35 Cal.4th 1111, 1122; *Regents of University of California v. Superior Court* (1970) 3 Cal.3d 529, 536–537 [91 Cal.Rptr. 57, 476 P.2d 457]; *O.W.L. Foundation v. City of Rohnert Park* (2008) 168 Cal.App.4th 568, 589 [86 Cal.Rptr.3d 1].) Common sense is achieved in the present case by imposing the election contest requirements of sections 16400 and 16401 upon the action filed by plaintiff to challenge the eligibility of defendants for final election to the Committee. We therefore conclude that while the election of defendants as Committee members may have occurred as part of a "direct primary" pursuant to section 316, and whatever that entails—primarily, the timing of the election—it was not a "primary election" as separately defined in section 341 for the purpose of imposing the primary election contest provisions of sections 16101 and 16421.

■ In summary, a "primary election" is defined in section 341 to include only nominations for office, not final elections. Defendants were elected as Committee members during the course of a "direct primary" conducted pursuant to section 316, but the final election of defendants cannot be defined as a "primary election" under section 341. The election of defendants as Committee members must be classified as other than a primary election, and therefore plaintiff was not required to file his contest within the five-day time limit of section 16421 applicable only to primary elections. ■ Plaintiff's election contest is governed by the requirements delineated in sections 16400 and 16401 for the filing of a contest to "any election," and his contest was timely filed within the 30-day time limit of section 16401, subdivision (d).

### Disposition

Accordingly, the judgment is reversed and the case is remanded to the trial court to conduct further proceedings consistent with the views expressed herein. Costs on appeal are awarded to plaintiff.

Marchiano, P. J., and Margulies, J., concurred.